Nott, J.,
delivered the opinion of the court:
This is an action upon implied contract for saving the United States tug Electra, upon the Missouri River, in February, 1881. *155 Though the action is not a suit in rem, it is to all intents and purposes an action to recover salvage.
On the part of the claimant it is insisted that the vessel was derelict and was saved by the services of the claimant, and that certain persons who boarded her after the claimant was in possession were not co-salvors, but occupied in a legal sense the position of being his employes. On the part of the defendants it is insisted that the vessel was not derelict; that the claimant’s services were not effective in saving her; that she would in all probability have escaped destruction if allowed to drift in the ice; that the persons who subsequently boarded her may more properly be regarded as her salvors, and that the court has not jurisdiction of the case.
Upon the question of jurisdiction the court sees no reason for changing a conclusion which was reached fourteen years ago and has remained unquestioned since. If there be any case where an implied contract ought to be maintained against the government, it is where a citizen has risked his life to save its property and has succeeded in saving what would otherwise have been lost. The opinion of Mr. Justice Loring in Bryant’s Case (6 C. Cls. R., 128) is, we think, conclusive upon the question. *
Upon the question whether this vessel was derelict the court expresses no opinion. The rule which awards a moiety to the salvors of a vessel found derelict is a rule which prevails in courts of admiralty, but is not obligatory upon courts of common-law jurisdiction.
Nevertheless in such cases a salvage compensation, substantially such as a court of admiralty would award, must be the measure of damages. One man works for his reasonable wages; another for a fixed salary; a third for the uncertainty of a salvage compensation; and the basis of that compensation is a proportion of the thing saved. The owners and the salvors become in a measure partners; if one loses, the other loses; if one gains, the other gains; if the thing saved is of little value, so much the worse for each; if it is of great value, so much the better for both.
A court does not stop to inquire whether the salvors will receive as compensation for their time $1,000 an hour or $1 a day. The danger, difficulties, and risks involved in the salvage service determine the proportionate interest of the salvors *156 in the thing saved; and the value of the thing saved gives the resulting amount of their compensation in dollars and cents.
Upon the questions whether the claimant was authorized to act as salvor of the vessel, and whether his services were salvage service, the court is of the opinion thatthere are certain facts in the case which are conclusive:
The only person who in any sense represented the owners at Boonville on the 8th February, 1881, was Captain Porter. He had been telegraphed by the master of the vessel, Mr. Fox, to look out for her, which may be interpreted to mean that he was to take all needful measures to save her. He communicated this information to the public and to the claimant, and virtually invited assistance in saving the vessel.
Moreover, he determined, when the vessel appeared, that it was impossible for him to save her, and he also regarded her as being in extreme peril, and thought the claimant’s boarding her from the bridge, while she swept under it, an act hazardous in the extreme.
In all cases of exigencythequestionisnothowthe facts appear to a court in the light of subsequent investigation, but how they appeared at the time of action to those who had to bear the responsibilities of acting.
Whether the danger was less than appeared; whether the current of the river was slower than was supposed; whether the vessel might have reposed in safety in the ice, are questions irrelevant to a proper determination of this case. It is sufficient that the representative of the owners, and all competent and experienced river navigators, and apparently every beholder who witnessed the affair, regarded the position of the vessel as one of extreme peril, and the boarding of her by the claimant as an heroic and praiseworthy act.
The court has been asked to hold that the claimant’s services were valueless after he reached the vessel, and that probably she would have drifted within reach of the river bank without his aid.
In such cases the end must be deemed to justify the means. Whether a vessel found derelict off the coast would have drifted into the harbor without aid; whether the salvors blundered in their navigation and came near wrecking her; whether the owners might not themselves have found her if she had been allowed to drift on the high seas, are speculative questions *157 with which a court cannot deal. It must be presumed in all such cases that if the salvors bring the vessef to a place of safety they were instrumental in saving’ her.
With regard to the services rendered by the two men who subsequently boarded the vessel, it seems to the court conclusive that they boarded her upon the invitation of the claimant and with his aid, and that they would not have boarded without his assent.
If they were before the court, the dangers which they ran and the services which they rendered might perhaps be inquired into; but as the ease now stands their attitude is simply that of having rendered assistance to the claimant, and being to that extent his employés.
The judgment of the court is that the claimant recover the sum of $3,000.