THE AKABA. THE CITY OF BIRMINGHAM. WOOD v. BURG et al.
BOSTON TOWBOAT CO. v. WOOD.

(Circuit Court of Appeals, Fourth Circuit. February 7, 1893.)

No. 36.

1. SALVAGE—COMPENSATION.

A towboat with a disabled steamship worth $130,000 in tow, under a
contract of towage from Turk's island to New York, which provided that
there should be no claim for assistance, salvage, or other services, broke a
propeller blade, parted her hawser, and abandoned the tow off the Hat-
teras Shoals in a hurricane. The vessel so abandoned was with much
difficulty and danger taken in tow by a passing freight and passenger
steamship, worth $350,000, plying on a regular schedule between New
York and Savannah, and taken into Hampton Roads, the hawsers being
twice parted on the way, and the towing vessel's bits being torn out.
The rescuing vessel lost her regular return trip, and her cargo of vege-
tables and fruit perished from the delay. *Held,* that an award of $30,000
salvage was not so excessive as to be disturbed on appeal.

2. SAME—CONTRACT—ABANDONMENT OF TOW.

After the abandonment two other towboats, dispatched by the towing
company, met the rescuing steamship with the disabled vessel in tow, and,
although their services were refused, passed a hawser to the disabled
steamship, and joined in the towage, until near Cape Henry, when they
cast off. *Held,* that the towing company could not recover on the contract,
nor for salvage.

3. SAME.

The fact that, for a portion of the voyage, the rescuing steamship
towed with the steel hawser of the towboat, which, after parting at the
time of abandonment, had been hauled aboard the disabled boat, gave
the towing company no right to salvage.

Appeals from the District Court of the United States for the
Eastern District of Virginia.

In Admiralty. Libels against the steamship Akaba, (James Marke
Wood, owner and claimant,) brought, respectively, by Charles S.
Burg, master of the steamship City of Birmingham, for salvage, and
by the Boston Towboat Company, for salvage and breach of contract.
In the district court a decree was entered allowing $30,000 for the
services of the City of Birmingham, and disallowing entirely the
claims of the Boston Towboat Company. The claimant of the Akaba
and the Boston Towboat Company separately appeal. Modified and
affirmed.

Statement by SIMONTON, District Judge:

The British steamship Akaba was in the month of February, 1892, at Turk's
island. She had then her shaft broken and her machinery disabled. Her
agents entered into a contract with the Boston Towboat Company to tow her
from Turk's island to New York, and to this end the towboat company sent the
tug Saturn, one of their tugs, to Turk's island. These were the terms of the
contract: If the Akaba was successfully towed to New York, and on this con-
dition only, the towboat company would be paid $6,000. No claim could be
made by the Saturn or her owners for assistance, salvage, or other services
rendered on the trip from Turk's island to New York. The Akaba must be
ready to be towed within 24 hours after the arrival of the Saturn at Turk's
island; if not, the Saturn was to be allowed demurrage at the rate of $250 per
day for every day's delay after the expiration of that interval. The Akaba,
although disabled, must be in condition to be towed. The Saturn reached

Turk's island, reported, was detained one day after the 24 hours had elapsed, took the Akaba in tow, and proceeded towards New York. On 27th February of the same year the Saturn, with the Akaba in tow, arrived off the coast of North Carolina, and there encountered a very heavy gale. The Saturn was towing the Akaba with a five-inch steel-wire hawser. During the gale a blade of the Saturn's propeller broke off, and soon after that the hawser parted close to the tug. The latter could not come up to the steamship, but lay off and on near her during the day. Towards nightfall the gale increased into a hurricane, with a heavy sea. The Saturn then left her tow, and made all speed she could to Hampton Roads. The Akaba at this time was off Hatteras Shoals, which were to leeward some 10 miles, without the use of her engines, with small use of her sails, drifting. The only recourse she had was a small steamer, the Ben Lodi, in sight, but unable to tow her, whose master lay near her to be on hand in case of disaster, so as to save life. On the morning of the 29th February she sighted the steamship City of Birmingham, and hoisted signals of distress. The City of Birmingham is a freight and passenger steamship plying on schedule time between Savannah and New York. She was about four years old, 3,000 tons burden, and was worth about $350,000. She was on her regular voyage to New York, with a crew of 50 men, and 25 or 30 passengers, and an assorted cargo of value, much of it being of a perishable nature, and which in fact did perish. Seeing the signals of distress, she went at once to the assistance of the Akaba. Being prevented by the heavy gale and high sea from communicating with her in any other way, she floated by buoy a line to the Akaba to which a hawser was bent. This effort consumed over two hours, but was finally successful. With two hawsers,—one of her own and the other of the vessel in distress,—the City of Birmingham began to tow her from her dangerous position. During these two hours the water had shoaled from 17 to 13 fathoms. After towing about three hours the hawser of the City of Birmingham parted. The tow was continued by her with the other hawser, when her bits broke out, and the other hawser also got loose. After great effort she again got her own hawser to the Akaba, and towed her nearly all night, when that hawser again parted. The sea having moderated, she waited until daylight, put out a small boat, and took the hawser of the Akaba, with which the towage was again resumed, and continued until the 2d March, when, with the Akaba in tow, she cast anchor in Hampton Roads. The hawser used by the Akaba was the steel-wire hawser of the Saturn, which, after it parted, was hauled aboard of the steamship. The Saturn, when she reached Hampton Roads, dispatched, in search of the Akaba, the towboats Taurus and Underwriter, belonging to the Boston Towboat Company. They are each worth about $50,000. They went to sea, and on 1st March found the Akaba in tow of the City of Birmingham, proceeding towards Hampton Roads, really needing no other aid. They offered their services to the Akaba, and were referred to the master of the City of Birmingham. He declined them. Nevertheless they went to the Akaba, to whom the Underwriter gave a hawser, and, the Taurus taking a hawser from the Underwriter, they joined in the towage. When the Akaba and her companions had nearly reached Cape Henry, the towboats cast off, and she went up alone with the City of Birmingham. Just after these two reached an anchorage, and the Akaba had let go her anchor, but before the line between her and the City of Birmingham was let go, the latter steamship came into collision with the British steamship Gordon Castle, riding at anchor in Hampton Roads, in which collision both vessels suffered greatly, and for which the Gordon Castle put in a claim of $1,000. The agreed value of the Akaba was $130,000. She was in ballast, with full complement of officers and men. The City of Birmingham, by her deviation of her voyage, lost her regular return trip to Savannah and the earnings thereon, and has been held responsible for the cargo of vegetables and fruit which perished from the delay. She also suffered considerable damages while towing the Akaba, caused by the strain of the towage and the wire hawser. A libel was filed by the City of Birmingham against the Akaba for salvage, and after she was in custody, by virtue of the warrant of arrest, the Boston Towboat Company filed its libel for salvage services rendered by the towboats Taurus and Underwriter, and for the services, use, and aid to salvage rendered by the wire hawser of the Saturn; and a second libel for breach of the contract of towage to New

York. These causes, tried together, came before the district court. The court awarded the City of Birmingham in a lump sum $30,000 salvage and expenses, gave to the Boston Towboat Company $250, one day's demurrage of the Saturn at Turk's island, and denied its claim for salvage on every ground. Damages for breach of towage contract were refused. The case comes here on appeal.

Sidney Chubb and Floyd Hughes, for claimant James Marke Wood.
Robert H. Smith and Richard Walke, for Boston Towboat Co.
Robert M. Hughes, for Charles S. Burg.

Before BOND and GOFF, Circuit Judges, and SIMONTON, District Judge.

SIMONTON, District Judge, (after stating the facts.) As to the City of Birmingham: The services of this steamship were salvage services of the most meritorious character. She found the Akaba on a dangerous coast,—perhaps the most dangerous of American coasts, —drifting to leeward in a heavy northeast gale, almost helpless. Notwithstanding that she had a number of passengers and a valuable cargo aboard, a great part of it perishable by delay, she went at once to the distressed vessel, rendered her skillful, prompt, and successful assistance, rescued her from her imminent peril, and, after great toil and danger, securely towed her to a place of safety. It would seem that all the elements which enter into a salvage service exist in this case—promptitude, courage, skill, great peril to life and property, toil, and success. The Blackwall, 10 Wall. 13; Cope v. Dry-Dock Co., 119 U. S. 628, 7 Sup. Ct. Rep. 336. As is said by Wallace, J., in The Baker, 25 Fed. Rep. 774:

"Neither the value of the property imperiled, nor the exact quantum of service performed, is a controlling consideration in determining the compensation to be made. The peril, hardship, fatigue, anxiety, and responsibility encountered by the salvors in the particular case; the skill and energy exercised by them; the gallantry, promptitude, and zeal displayed,—are all to be considered, and the salvors are to be allowed such a generous recompense as will encourage and stimulate similar services by others."

It is not necessary that there should be a certainty of loss unless the service was rendered. It is sufficient that there is a reasonable apprehension of danger, and that the service is rendered in reference to that apprehension of danger, and not in the ordinary course of business. See cases quoted in The Oregon, 27 Fed. Rep. 872. When we consider the character of the coast near Hatteras, and the supreme necessity for encouraging heroic endeavor in saving life and property endangered upon it, we cannot say that the learned district judge erred grossly in his finding the reward which he fixed. "By the uniform course of decision in this court," say the supreme court in The Connemara, 108 U. S. 359, 2 Sup. Ct. Rep. 754, "during the period in which it had full jurisdiction to reverse decrees in admiralty upon both facts and law, as well as in the judicial committee of the privy council of England, exercising a like jurisdiction, the amount decreed below was never reduced unless for some violation of just principles, or for clear and palpable mistake or gross overallowance." This part of his decree is affirmed. In the evidence taken in the case items of damage caused by the collision of the

salving vessel with the Gordon Castle appear. The court below alludes to a part of the expense incurred by the City of Birmingham; but in its finding it gives a lump sum, without discussing this collision, or the responsibility of the salved vessel therefor, or stating whether it includes these damages among the expenses. We approve the sum found, but we express no opinion on this point. Indeed, the record does not disclose to what extent the towage of the Akaba contributed to the collision.

With respect to the towboats: The Saturn, their consort, had abandoned her tow, the Akaba, in her extremity. She had no right thenceforward to dispose of her. When the towboats came up to the Akaba, and attempted to force their services on her and the City of Birmingham, the latter vessel was fully competent to complete the salvage service, and in no need of any assistance, the sea being smooth and the weather calm. For these reasons she refused their aid. They were intruders, asserting rights to which they had no shadow of claim. Their offers were properly rejected, and they have no standing in court.

With regard to the wire hawser: The Boston Towboat Company claims salvage for its use. Apart from the fact that the contract between that company and the Akaba expressly "provides that no claim for assistance or salvage or other services shall be rendered," we see no right to salvage for the hawser on the facts of the case. It was used without the knowledge or consent or concurrence of the Boston Towboat Company. Its use, and the service it rendered to the Akaba, can in no sense inure to the benefit of that company as salvage. Salvage is awarded to those who voluntarily and spontaneously render service in saving property at sea. Although salvage as claimed cannot be allowed, yet, under these pleadings, we can entertain another question. The hawser was left in the possession of the Akaba, and was brought into port. It has been lost. The right of property of the towboat company in the hawser was not lost. When articles are lost at sea the title of the owner in them remains, even if they be found floating on the surface or cast upon shore. All that the finder can do is to claim salvage on them. Cope v. Dry-Dock Co., 119 U. S. 630, 7 Sup. Ct. Rep. 336. A fortiori in the case of this hawser left in the control of the Akaba. This being so, the Akaba was a bailee without hire, liable for gross negligence. It does not appear in the case made how this hawser was lost, that is to say, with what absence of care. When the case is remanded to the district court, this can be made the subject of inquiry; and, if it appear that the Akaba is liable, an equitable adjustment of the loss can be made.

The only other question is as to the libel of the Boston Towboat Company for breach of contract of towage. After the Saturn reached Hampton Roads, and was repaired, the libelant offered to complete the towage to New York, either with her or with the towboats Taurus and Underwriter. This offer was made after the Saturn had abandoned the Akaba, and she had been salved by the City of Birmingham, and was in the custody of the court, under the warrant of arrest. We concur with the court below in the conclusion

that there is no merit in this claim, and that the libel should be dismissed.

Except as herein modified, the decree of the district court is affirmed. Let the cause be remanded to the district court for such proceedings as may be necessary in conformity with this opinion.