## THE CITY OF HAVERHILL.

### KNICKERBOCKER STEAM-TOWAGE CO. v. THE CITY OF HAVERHILL.

### WATROUS v. THE ICE KING.

(District Court, S. D. New York. March 1, 1895.)

SALVAGE—TUG AND TOW—DANGEROUS LEAK—DEVIATION.

The City of H., a flat-bottomed river boat, while in tow from Boston to New York, with other barges, in December, sprang a dangerous leak not far from Gay's Head, in weather not unusual for the season, and without any fault of the tug. The tug was obliged to anchor the rest of her tow, and take the H. into Newport; and she preserved the latter from sinking by the use of the tug's pumps: *Held*, that the service of the tug in the rescue of the H. was outside of the contract of towage, and entitled the tug to extra compensation on salvage principles, but upon a lower basis of compensation than might be awarded to an independent tug, and $800 was allowed.

This was a libel in rem by the Knickerbocker Steam-Towage Company, owners of the tug Ice King, against the steamship City of Haverhill, to enforce a claim for salvage. A cross libel was filed by Warren P. Watrous, owner of the City of Haverhill, alleging fault on the part of the tug which contributed to the injuries sustained by the salved vessel, and rendered her liable therefor under the contract of towage.

Wing, Putnam & Burlingham, for Knickerbocker S. T. Co. and the Ice King.

Goodrich, Deady & Goodrich, for the City of Haverhill and Warren P. Watrous.

BROWN, District Judge. 1. I do not find sufficient evidence to support the claim in the cross libel that the hawser was fastened in an improper manner, or that the mode of fastening caused any damage, or contributed to produce the leak; or that there was any

negligence by the Ice King when she ran alongside of the City of Haverhill to rescue her from sinking. In the circumstances of a choppy sea, the nighttime, and the City of Haverhill being a light flat-bottomed boat, and tossing almost like a chip upon the waves, the slight damage done in necessarily going alongside, in the absence of evidence of any specific acts of negligence or lack of care and reasonable nautical skill, should be set down to sea perils in a difficult situation, rather than to any presumptive negligence in the Ice King.

2. The service of the Ice King in deviating from the usual course of towage on a trip from Boston to New York by putting in to Newport with the City of Haverhill, and keeping her afloat by her pumps, was a service wholly outside of the contemplation of the parties in making the towage contract. The deviation was made necessary because the City of Haverhill sprung a dangerous leak, under circumstances not at all extraordinary at that season, but only such as were to be expected in December, when the trip was undertaken. The leak, I find, occurred through no fault of the Ice King, or lack of reasonable care on her part, but, as her captain says, from striking a heavy sea, in the roll from the southward. She was a flat-bottomed river steamer, not designed for service at sea. The contract of the parties for towage to New York imported that the owner of the City of Haverhill should bear all risks, save those caused by the fault of the tug. On plunging in the southerly roll some seams were opened, and she was saved from sinking through the Ice King's superior pumps, which were sufficient to keep her afloat until she was towed by the Ice King into Newport, where the open seams on her port side, some 20 feet aft of the stem, were temporarily filled in, sufficiently to enable the towage to be completed after the loss of a day's time. This was an extraordinary service, because not within the scope or contemplation of the contract. It should, therefore, be compensated for on salvage principles. But the equitable relation of the parties in such cases, where the tow is all the time in charge of the tug, requires, I think, the allowance of a much less compensation than would be proper to be given to an independent tug. Some of the important considerations in salvage awards are absent; and here there was no actual danger incurred by the tug.

The great differences in the estimates of the value of the City of Haverhill, viz., from $2,500 to $10,000, are embarrassing, so far as that element is to be considered in fixing the award. On the whole evidence, I think $800 will be a proper award, with costs, and with a dismissal of the cross libel, without costs.

Decrees accordingly.