UNITED STATES v. MORGAN.

(Circuit Court of Appeals, Fourth Circuit. February 6, 1900.)

No. 311.

1. SALVAGE — ACTIONS AGAINST UNITED STATES — JURISDICTION OF CIRCUIT COURT.

Act Cong. March 3, 1887 (24 Stat. 505), gives jurisdiction to the court of claims, inter alia, on any contract, express or implied, with the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States, either in a court of law, equity, or admiralty, if the United States were suable. Section 2 gives the federal district and circuit courts concurrent jurisdiction with the court of claims as to matters named in the preceding section, except that the district courts have jurisdiction not to exceed $1,000, and the circuit courts between $1,000 and $10,000. *Held*, that a claim against the United States for salvage in the sum of $10,000 is within the jurisdiction of the circuit court.

2. SAME — TOWAGE — AMOUNT.

A lightship belonging to the United States government broke loose from her moorings, and was carried out into Chesapeake Bay. The sea was

described by many as being the highest ever known in Hampton Roads. A tug sighted the lightship, which hoisted a signal for assistance, described as a signal for a tow. The tug immediately answered the signal, but, owing to the gale of wind and heavy sea prevailing, was unable to approach her in the usual manner from the leeward, and pass a hawser, but had to go to the windward side, and use a heaving line. Three efforts to cast the line were made before it was caught, the tug, in the meantime, being in the trough of the sea, with the seas breaking over the man casting the line. Some three hours later the lightship was brought to the wharf. *Held*, that $1,200 for salvage service, though on the border line of towage service, will not be disturbed as excessive.

Appeal from the Circuit Court of the United States for the Eastern District of Virginia.

This case comes up on appeal from a decree of the circuit court of the United States for the Eastern district of Virginia. The action below was brought by way of petition on the part of A. D. Morgan, master of steam tug Frank A. Lowe, against the United States. The cause of action is a claim for salvage of the lightship No. 49, the property of the United States. The form of pleading is in admiralty in personam. The amount claimed is $10,000. The court below considered it a case of salvage, and awarded $1,200 salvage. The case comes here on exceptions to the decree. The errors assigned are to the finding of the district court. This is an evident typographical mistake, the petition for allowance of appeal being to the circuit court. These alleged errors are: (1) That the petitioner was allowed to file his petition; (2) that the court erred in not sustaining an exception to the jurisdiction of the court; (3) that the court erred in requiring the respondent to answer the petition; (4, 5) that the court erred in holding it a case of salvage, and in allowing an award of $1,200.

Edgar Allan, U. S. Atty.

Floyd Hughes, for appellee.

Before SIMONTON, Circuit Judge, and PAUL and BRAWLEY, District Judges.

SIMONTON, Circuit Judge. The vital question in this case is, had the court jurisdiction? The action is against the United States. It is a claim for salvage. The proceeding to recover salvage is in the circuit court, not in the district court, and it is in form a libel. The United States, a sovereign, cannot be sued, except by its own consent, and in the mode prescribed by congress. Act Cong. March 3, 1887 (24 Stat. 505), gives jurisdiction to the court of claims of "all claims founded upon the constitution of the United States, or any act of congress, except for pensions or upon any regulation of an executive department, or upon any contract, express or implied, with the government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States, either in a court of law, equity or admiralty, if the United States were suable." By the second section of the act, the district and circuit courts of the United States are given concurrent jurisdiction with the court of claims as to all matters named in the preceding section, with the provision that the district courts have jurisdiction when the amount of the claim does not exceed $1,000. And the circuit courts have jurisdiction when the amount of the claim exceeds $1,000, and does not exceed $10,000.

The first question is, is it a claim for salvage upon a contract, express or implied, or is it a claim for damages, liquidated or unliquidat-

ed, in a case not sounding in tort, in respect of which claim the party would be entitled to redress against the United States in a court of admiralty, if the United States were suable? If it be either, the court has jurisdiction. Salvage is a reasonable reward for services rendered in saving property in danger of perishing from a maritime misadventure by parties under no obligation of duty, who voluntarily undertake the service. Maude & P. Shipp. 419; Macl. Shipp. 597; The H. M. S. Thetis, 3 Hagg. Adm. 14. It is a reward for service. And the service is rendered in the expectation of the reward. The compensation is supervised and controlled by the court of admiralty, even although there be an agreement as to the amount. The Tornado, 109 U. S. 110, 3 Sup. Ct. 78, 27 L. Ed. 874. But, it having been determined a case of salvage, the right to be compensated is recognized and assumed. It resembles the common-law contract for work and labor done. Only the compensation is allowed upon a liberal scale. Very frequently the compensation for saving property in maritime peril is given only pro opere et labore, as when it is reduced to a towage service, as in The Emily B. Souder, 15 Blatchf. 185, Fed. Cas. No. 4,458, clearly on the implied contract. In other words, the salvor renders the service upon the understanding and expectation that he will be rewarded for it, the amount of the award to be fixed by a court of admiralty, if the salvor and the owner of the property salved cannot agree.

A claim for salvage is secured by a lien, and the lien cannot arise except from a maritime contract or a maritime tort. Salvage, clearly, is not a tort. When the effort to save property exposed to perils of the sea is successfully performed, an obligation at once arises upon the part of the owner of the salved property to compensate the salvor for such service. The compensation is to be measured by the risk encountered and the heroism displayed in the successful enterprise. The Oregon (D. C.) 27 Fed. 872. The courts award such compensation in a liberal spirit, as well to reward the salvor as to encourage others in similar cases. The Alphonso, 1 Curt. 376, Fed. Cas. No. 17, 749. The Sandringham (D. C.) 10 Fed. 556; The Suliote (C. C.) 5 Fed. 99; The Blaireaw, 2 Cranch, 265, 2 L. Ed. 266. Salvage is said to be independent of contract. Kenn. Civ. Salv. p. 3. That is to say, notwithstanding any express contract made between the salvor and the owner of the property salved, the court will always exercise an equitable jurisdiction with respect to such an agreement, and will set it aside if inequitable in its origin. The Waverley, L. R. 3 Adm. & Ecc. 378. "The jurisdiction which the court exercises in salvage cases is of a peculiarly equitable character. The right to salvage may arise out of an actual contract, but it does not necessarily do so. It is a presumption of law arising out of the fact that the property has been saved; that the owner of the property, who has had the benefit of it, should remunerate those who have conferred the benefit on him, notwithstanding that he has not entered into any express contract on the subject." In re Five Steel Barges, 15 Prob. Div. 142. Whether, therefore, we treat a claim for salvage service as based upon an implied contract for compensation growing out of its successful event, or whether we treat it as among that class of claims "in respect of which the party would be entitled to redress

against the United States in a court of admiralty, if the United States were suable," we must conclude that the present case comes within the scope of the act of March 3, 1887. In The Davis, 10 Wall. 18, 19 L. Ed. 877, the question was made whether property of the United States on a salved vessel is liable for salvage. Mr. Justice Miller, speaking for the court, quoting the authorities, declares that there is no reasonable doubt on the subject. "We are quite satisfied," he says, "with the reasons on which the principle rests, and are of the opinion that when property of the government has been salved from destruction by salvors, or by those sacrifices which are compensated by a contribution in general average, justice and sound policy require that it should bear its share of the burden which the unanimous voice of maritime nations imposes on all other property in like condition." There is one exception with regard to the government, and that is that no proceeding in rem can be had in such a case. Briggs v. The Lightboat, 11 Allen, 157. And this on the ground of public policy. All the property of the government is held and used for public purposes. The possession of the government cannot be disturbed, as this might defeat the public purpose. The Davis, supra. In The Viola (C. C.) 52 Fed. 172, the district court of Pennsylvania took jurisdiction of and awarded salvage for a government lightship. The decree was affirmed in the circuit court of appeals of the Third circuit (5 C. C. A. 283, 55 Fed. 829). The question of jurisdiction was not raised. There is a close analogy in cases like this at bar and cases in which the government takes and uses private property for public purposes. These are the use of patents with the consent of the owner and "with the thought of compensation therefor." U. S. v. Palmer, 128 U. S. 262, 9 Sup. Ct. 104, 32 L. Ed. 442; U. S. v. Berdan Firearms Mfg. Co., 156 U. S. 552, 15 Sup. Ct. 420, 39 L. Ed. 530. There an implied contract was construed to exist, and a suit thereon was entertained against the United States.

It might be objected that the suit is in admiralty, and that jurisdiction over cases of salvage is vested only in the district courts of the United States. Housman v. The North Carolina, 15 Pet. 40, 10 L. Ed. 653. But the act of congress gives jurisdiction to the court of claims of cases in which the party would be entitled to redress in a court of admiralty as well as in a court of law or equity. That court has uniformly entertained jurisdiction and awarded compensation in cases of salvage. Gould v. U. S., 1 Ct. Cl. 184; Bryan v. U. S., 6 Ct. Cl. 128, in which this point is decided; McGowan v. U. S., 20 Ct. Cl. 147. The act of congress gives the circuit court, in cases of claims not exceeding $10,000, precisely the same jurisdiction as the court of claims. It is true that the form of proceeding in the case at bar is the same as a libel in admiralty. But this is merely modal and formal. The essence of the pleading is a petition to be awarded compensation for valuable and highly meritorious services rendered the government in saving its property in maritime peril. The facts are stated in the terse and clear form adopted by admiralty courts for similar cases. We are of the opinion that the circuit court was not in error in permitting the petition to be filed, in requiring the respondent to answer, and in adjudicating the case.

The merits of the case require little discussion. The petitioner is master of the Frank A. Lowe, a steam tug 76.5 feet long, 16.7 feet beam, 7.9 feet deep, gross tonnage 52.67 tons, crew, all told, five men. Her value is about $15,000. She was used in towing vessels in the Elizabeth and James rivers, Chesapeake Bay, and adjacent waters, and on the high seas. The regular station of the United States lightship No. 49 is off Smith's Island, marking the northern entrance of the capes of Virginia. She had two masts, with one sail on each, and a jib. Her crew were seven men in all, including her master. Her value was $50,000. During a heavy gale from the northeast on the 26th of September, 1894, said lightship broke adrift from her moorings, and, after anchoring twice at intervals and losing all her anchors, said lightship was carried before the gale into Chesapeake Bay, and in past Thimble Light, a lighthouse station about three miles a little to the northward of east of Old Point Comfort. She passed Thimble Light in the afternoon of the 27th, and had set two of the three sails she carried, the other, the foresail, having been carried away in the gale, and her spare foresail not having been bent. The sails she had set were a jib and a mainsail, closereefed. The tide was running strong flood, and the wind, though it had slightly moderated, was still blowing a heavy gale from the E. N. E. The sea was described by many witnesses as being the highest ever known in Hampton Roads. The tug Lowe had gone out in the teeth of the gale to seek communication with a schooner, the Jane Burrell, which had broken from her anchorage in Hampton Roads, and had drifted against a steamship. The tug had not been able to get up to the schooner, and could only communicate with her by floating a bottle with a message therein. About 4 o'clock in the afternoon, Capt. Morgan, on the Lowe, sighted lightship No. 49 between Old Point and the bell buoy, a buoy situated a little more than half way between Old Point and the mouth of the Elizabeth river (as shown on the chart herewith filed as evidence in this cause), coming up before the wind and sea with a signal for assistance, consisting of a flag in the rigging. The master of the lightship, upon seeing the tug, had hoisted this signal. The tug immediately went to her assistance in answer to this signal, which master of the tug describes as a signal for a tow, but, owing to the gale of wind and heavy sea prevailing, was unable to approach her in the usual manner from the leeward and pass a hawser, but found it necessary to go the windward side and use a heaving line. Three efforts to cast this heaving line were made before it was caught on board the lightship, the tug, in the meantime, being in the trough of the sea, with the seas breaking over the man casting the line. A hawser from the tug was thus finally passed to the lightship between half past 4 and 5 o'clock on the afternoon of April 27th, and the lightship was then taken in tow and towed by the tug with some difficulty until she had gone up the river a little distance, but afterwards with little trouble, and brought to the buoy wharf at Portsmouth, where she arrived at 7:30. The circuit court, hearing all the testimony, awarded the tug $1,200, as for a salvage service of low order of merit, on the border line of towage service, or, as the judge below expresses it, extraordinary towage. The

award is liberal in the extreme. Yet we cannot say that it is in violation of just principles, or a clear and palpable mistake, or a gross overallowance. Under these circumstances, the award will not be disturbed. The Akaba, 4 C. C. A. 281, 54 Fed. 198; Transportation Co. v. Pearsall, 33 C. C. A. 161, 90 Fed. 439; The Excelsior, 123 U. S. 40, 8 Sup. Ct. 33, 31 L. Ed. 75. The decree of the circuit court is affirmed, without costs.