### THE JOSEPH F. CLINTON.

(Circuit Court of Appeals, Second Circuit. April 10, 1918.)

No. 218.

1. SALVAGE ⚖⇒51—AWARDS—PROPRIETY.
    Awards of salvage almost always depend on such a nice adjustment of differing estimates of danger and value that appeals therefrom, to merit consideration, must show a yielding to erroneous principle or plain misapprehension of facts.

2. TOWAGE ⚖⇒4—DUTY OF TUG—ABANDONMENT.
    A tug is bound by the contract of towage not to abandon its tow, when the former gets into trouble, until all reasonable resources of good seamanship are exhausted, and until that be shown no claim for other services, unless outside of and beyond the contract, can be allowed.

3. SALVAGE ⚖⇒48—EVIDENCE—BURDEN OF PROOF.
    The burden of showing that a tug exercised all resources of good seamanship for preservation of its tow is upon the tug in suit for salvage of its tow.

4. TOWAGE ⚖⇒13—DUTY OF TUG.
    Where a barge in tow was unable to control the water in her hold, as her pumps would not work and it was rising, it was clearly the tug's duty under the ordinary contract of towage to take the barge to a place of safety, if one was reasonably near by and could be reached without danger to the rest of the tow or the tug.

5. SALVAGE ⚖⇒13—AWARD—SCOPE.
    For services outside of the contemplation of parties in making a contract for towage, remuneration may be given; and if they amount to salvage, a salvage award is due.

6. SALVAGE ⚖⇒13—TOWAGE SERVICES.
    Where a tug, finding that a barge in tow was in trouble, towed it into a harbor, where the tug's engineers repaired the barge's pumps, and by means of such pumps and the tug's own syphon brought the water in the hold of the barge under control, such service should be treated as salvage service, being beyond the contract of towage.

7. SALVAGE ⚖⇒13—DUTY OF TUG—UNSEAWORTHINESS OF TOW.
    That a barge in tow was unseaworthy when it left port does not affect the nature of the tug's duty, or the right to salvage, for salvage service beyond the towage contract.

---

⚖⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

8. SALVAGE ⬤⟹34—SERVICES—COMPENSATION.

Where the contract price for towage was $415, and the tug, finding that the barge in tow, which, with its cargo, was worth over $33,000, was in trouble, towed the barge into a harbor and repaired its pumps, etc., thus preventing it from sinking, *held*, under the circumstances, that the owner of the tug was entitled to an award of $1,000, though the master of the barge refused to complete the towage.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by the Southern Transportation Company against the barge Joseph F. Clinton, her tackle, etc., claimed by Smith & Terry, Incorporated. From a decree for libelant, claimant appeals. Reversed and remanded, with directions.

The action is for salvage services rendered to the barge by libelant's tug Henrico, and on a valuation of hull, cargo, and freight of $33,400, an award was given of $6,850. In the afternoon of December 13, 1916, the Henrico left Hampton Roads, bound for New York, with a tandem tow of two coal-laden barges, of which the Clinton was the smaller and the after boat. Her cargo was somewhat lighter than on previous occasions on account of the winter season (as is customary), and also because she needed caulking in her upper seams especially. At noon on the following day the Clinton signaled that she was in trouble, and the Henrico turned back to investigate; the tow being then about 15 miles off Chincoteague. The barge was obviously too low in the water, and her pumps had refused to work. Earlier in the trip her master had unsuccessfully attempted to attract attention, and, when the tug noticed signals, there was about 5 feet of water in the hold and no means of controlling it.

The Henrico immediately headed for Chincoteague harbor, left the other barge anchored near the entrance, and took the Clinton into Tom's Cove, where the engineers from the tug overhauled the barge's pumping arrangements and put them in order; a piece of work of which the barge crew was incapable, and which could with difficulty have been done in a seaway. The tug also put in her own syphon, with such results that the water was entirely under control by evening, and by next morning, her upper planking being above water, libelant's master admits that the barge's pump could "take care of it." The barge captain obtained some sawdust, and applied it to the leaky seams, and was ultimately towed to New York by another tug without incident or injury. He declined to go on with the Henrico, because of the presence of the other and larger barge, which necessitated keeping farther from shore than he wished to go.

The boats got to Chincoteague in good weather for winter, but the next day it snowed and blew a gale, and tug and other barge lay in shelter until the morning of the 17th, when they departed; arrangements having been made by telephone for the care of the Clinton. The tug was in no danger while assisting the Clinton, and not over 24 hours elapsed from the barge's signal for help to the time when her repaired pumps and sawdusted seams kept her safely afloat. The towage contract between the Henrico and the Clinton was of the usual kind so far as the record shows, and the price $415.

Ward D. Williams, of New York City (Horace L. Cheyney, of New York City, of counsel), for appellant.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark, of New York City, of counsel), for appellee.

Before ROGERS and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

HOUGH, Circuit Judge (after stating the facts as above). [1] Awards of salvage almost always depend for propriety on such a nice adjustment of differing estimates of danger and value that appeals, to merit consideration, must show a yielding to erroneous principle or plain misapprehension of facts. The Florence, 71 Fed. 527, 18 C. C. A. 240.

[2, 3] In this instance the pleader, and therefore probably the court below, has overlooked the principle that a tug is bound by the contract of towage not to abandon both tow and contract when the former gets into trouble, until the reasonable resources of good seamanship are exhausted. The tug's engagement is usually, as here, to take the tow from one place to another in a skillful manner (The Thomas Purcell, Jr., 92 Fed. 406, 34 C. C. A. 419), and when danger arises, the tow cannot be abandoned until all reasonable efforts for its preservation have been exhausted (The Carbonero, 122 Fed. 753, 58 C. C. A. 553; The Geo. Hughes, 183 Fed. 211, 105 C. C. A. 643), and the burden of showing such efforts is on the tug (Re Cahill, 124 Fed. 63, 59 C. C. A. 519). The citations made are of suits to recover from the tug, for breach of towing contract; and it is obvious that no claim for any other reward or remuneration can lawfully be made by the tug until the obligation of that contract has been fulfilled as far as reasonably possible, or (what is the same thing in legal effect) the service claimed for is shown to be outside of and beyond the same.

[4] Applying this principle, it was clearly the tug's duty under the contract of towage to get the Clinton to a place of safety, if reasonably near by and to be reached without danger to the rest of the tow or the Henrico. On the facts shown, the towage into Chincoteague, to shallow, quiet water and soft bottom, was but a slight extension of the tug's duty, and for it she is entitled but to a reasonable recovery for work and labor done. Let the question be put whether any claim for salvage could have been made, if the Henrico had taken the barge to Chincoteague and left her there on the mud. The question answers itself, yet, if such service be not salvage, it was but a slight extension of the towage agreement.

[5] For services outside the contemplation of the parties in making the contract for towage, remuneration may be given, and, if they amount to salvage, a salvage award is due. The City of Haverhill (D. C.) 66 Fed. 159. What is salvage, as distinguished from mere towage, has been sometimes discussed (The Viola, 55 Fed. 829, 5 C. C. A. 283; United States v. Morgan, 99 Fed. 570, 39 C. C. A. 653) without, we think, advancing beyond the test for salvage laid down by Brown, J. (The Plymouth Rock [D. C.] 12 Fed. 634; McConnochie v. Kerr [D. C.] 9 Fed. 50); that is, a successful effort to rescue from an actual or apprehended danger.[1]

As applied to a boat in tow, it is said, and truly, that promptly to deviate into a harbor of refuge is to guard against danger; and it is

[1] Followed with copious citations in The Flottbek, 118 Fed. 954, 55 C. C. A. 448; The Kennebec, 231 Fed. 423, 145 C. C. A. 417.

also true that volunteer towage is often a salvor's effort, but the contract of towage, while not imposing the duty of deviation, established a relation which made a moderate charge for deviating sufficient.[2]

[6] After reaching Tom's Cove the Clinton would have sunk at her mooring, had it not been for the prompt and efficient labors of the Henrico's engineers and the use of the tug's syphon. That rescue from imminent danger was beyond both the towage agreement and reasonable expectation except as a salvage service. To render it required at the outside one day, and when it was over the Clinton was fit to keep on to New York (as the event proved), instead of being (probably) raised at great expense by her insurers in a place so remote from wrecking and salving plants as Chincoteague.

[7] The contention is made that the Clinton was unseaworthy on leaving Hampton Roads. If true, the fact would not affect the nature of tug's duty or the right to salvage. How far it might have lessened the quantum of effort due under the towage contract is but speculation, as we find the barge seaworthy; i. e., reasonably fit for the voyage, until her pump broke down, and that turned out to be not a structural defect, but failure to keep refuse out of the inspirator.

[8] In making award we bear in mind that the Henrico was ready to take the Clinton on to New York; that the latter refused, and has not paid the towage bill.

The decree appealed from is reversed, and cause remanded, with directions to enter decree for libelant for $1,000 and costs of District Court. Appellant will recover costs of this appeal.

---

[2] For the statement of rule in England, see The Minnehaha, Lush, 335; The J. C. Potter, 3 A. & E. 295; and The Marechal Suchet, [1911] P. D. 1, to the effect that salvage begins when tug justified in abandoning towage contract, but vis major compelling abandonment must be shown.