THE CITY OF PHILADELPHIA.

THE MAUCH CHUNK.

(District Court, E. D. Pennsylvania. February 19, 1920.)

No. 6 of 1920.

1. SHIPPING ☞3½, New, vol. 8A Key-No. Series—VESSEL UNDER FEDERAL CONTROL NOT SUBJECT TO SEIZURE IN REM.

That a vessel at the time of a collision had been taken over by the Railroad Administration and was being used for transportation purposes by the United States does not exempt it from lien for damages caused by its fault; but under the provision of Federal Control Act March 21, 1918, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¾j), that "no process, mesne or final, shall be levied against any property under such federal control," such vessel is not subject to seizure in a suit in rem while so in use by the government.

2. ADMIRALTY ☞44—"MESNE PROCESS" DEFINED.

"Mesne process" is used in the Supreme Court admiralty rules to designate process by which the person of the respondent is arrested, or his property in actions in personam, or the vessel in actions in rem, is arrested or seized.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Mesne Process.]

3. ADMIRALTY ☞44—"MESNE PROCESS" DEFINED.

"Mesne process," as used in admiralty rule 1 (29 Sup. Ct. xxxix), providing that no mesne process shall issue until the libel shall be filed in

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the clerk's office from which such process is to issue, means the process intervening between the commencement of the suit by filing the libel and final process.

In Admiralty. Suit for collision by the Wilmington Steamboat Company, owner of steamer City of Philadelphia, against the ferryboat Mauch Chunk. Dismissed for want of jurisdiction.

Lewis, Adler & Laws, of Philadelphia, Pa., for libelant.
William Clarke Mason, of Philadelphia, Pa., for respondent.

THOMPSON, District Judge. [1] The question in this case is whether a libel in rem for collision will lie, and seizure by the marshal thereunder may be had, where a ferryboat, which on December 31, 1917, was taken over for war transportation purposes of the United States, and at the time of the collision in August, 1919, was and still is in the possession and control and being operated by the United States Railroad Administration under the Director General of Railroads. The suggestion of the Director General that the court is without jurisdiction, after reciting the facts, states:

"That because of the possession of the said ferryboat Mauch Chunk by the duly authorized officials of the United States government, and because of the devotion of the said ferryboat Mauch Chunk to the public uses of the federal government, the said ferryboat Mauch Chunk is immune from process and free from seizure and attachment, and the libel filed in the above-entitled cause and all proceedings had thereunder should be dismissed for want of jurisdiction."

Section 10 of the Federal Control Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¾j) provides:

"But no process, mesne or final, shall be levied against any property under such federal control."

The apparent purpose of the paragraph was to prevent interference with the government's possession of property used by it for the purpose of operating the transportation systems of the country, and its language should be construed in connection with the reasons of public policy which at all times exempt government vessels owned or employed by the United States from seizure. All property of the government is held for public purposes, and the possession of the government cannot be disturbed, as that would defeat the public purpose. The Siren, 7 Wall. 152, 19 L. Ed. 129; U. S. v. Morgan, 99 Fed. at page 573, 39 C. C. A. 653; Briggs v. Lightboat, 11 Allen (Mass.) 157; The Davis, 10 Wall. 18, 19 L. Ed. 875.

[2] Such purpose would not be accomplished if the term "mesne process" is to be construed as excluding original process. The term is used in the Supreme Court admiralty rules to designate process by which the person of the respondent is arrested, or his property in actions in personam and the vessel in actions in rem is arrested or seized.

[3] Rule 1 (29 Sup. Ct. xxxix) provides that no "mesne process" shall issue until the libel shall be filed in the clerk's office from which such process is to issue. "Mesne process" is clearly used here to mean

the process intervening between the commencement of the suit by filing the libel and final process. In rule 2 (29 Sup. Ct. xxxix) "mesne process" includes a warrant of arrest of the person of the defendant, attachment of his goods and chattels, if he cannot be found, of his credits and effects if such property cannot be found, and a monition in the nature of a summons to appear and answer to a suit.

The first nine rules are an elaboration of the provisions for "mesne process," and the ninth rule provides that in cases of seizure, and in other suits and proceedings in rem, the process, unless otherwise provided for by statute, shall be by warrant of arrest of the ship, goods, or other thing to be arrested. If the process provided by the second rule is "mesne process," it follows that that provided by the ninth is also "mesne process," and it is in my opinion free from doubt that it was used in the act in a sense broad enough to cover what the Supreme Court has called "mesne process" in admiralty.

It is not for the court to determine whether the seizure of a vessel in the possession of and operated by the United States through its agencies, and the requiring of the United States to enter bond to obtain its release, would have the effect in fact of interfering with the operations and public use of the vessel. The reasons of public policy upon which the exemption is based cause it to be universally applied. It follows, either under the act of Congress or upon the reasons of public policy, that the vessel must be released from seizure by the marshal.

The doctrine, based upon reasons of public policy, which exempts from seizure a vessel in possession of and operated by the United States for public purposes, does not, however, divest the vessel of the claim or lien of the injured party. In The Siren, supra, Mr. Justice Field said:

"For the damages occasioned by collision of vessels at sea a claim is created against the vessel in fault, in favor of the injured party. This claim may be enforced in the admiralty by a proceeding in rem, except where the vessel is the property of the United States. In such case the claim exists equally as if the vessel belonged to a private citizen, but for reasons of public policy, already stated, cannot be enforced by direct proceedings against the vessel. It stands, in that respect, like a claim against the government, incapable of enforcement without its consent, and unavailable for any purpose."

In the case of The Bold Buccleugh, 7 Moore, P. C. 267, cited and approved in The John G. Stevens, 170 U. S. at page 115, 18 Sup. Ct. at page 545, 42 L. Ed. 969, Chief Justice Jervis, in delivering judgment, said:

"A maritime lien does not include or require possession. The word is used in maritime law, not in the strict legal sense in which we understand it in courts of common law, in which case there could be no lien where there was no possession, actual or constructive, but to express, as if by analogy, the nature of claims which neither presuppose nor originate in possession.

"This claim or privilege travels with the thing, into whosesoever possession it may come. It is inchoate from the moment the claim or privilege attaches, and when carried into effect by legal process, by a proceeding in rem, relates back to the period when it first attached."

And Mr. Justice Gray says in The John G. Stevens, supra, 170 U. S. at page 117, 18 Sup. Ct. at page 546 (42 L. Ed. 969):

"In this country, the principle, applied in the case of The Bold Buccleugh to a claim for damages by collision, that a maritime lien is created as soon as the claim comes into being, has long been held to be equally applicable to all claims, which can be enforced in admiralty against the ship, whether arising out of tort or of contract."

As the claim or lien against the vessel existed as soon as the collision occurred, the fact that the United States still continues in possession does not, either under section 10 of the Railroad Control Act or under the doctrine of public policy, forever bar the right of the libelant to mesne process, but merely postpones and holds it in abeyance during the period of that possession. The prohibition of the statute and the reasons of public policy apply only to the immediate application of the remedy and not to the right of action. In The Siren, the court says:

"The authorities to which we have referred are sufficient to show that the existence of a claim, and even of a lien upon property, is not always dependent upon the ability of the holder to enforce it by legal proceedings. A claim or lien existing and continuing will be enforced by the courts whenever the property upon which it lies becomes subject to their jurisdiction and control. Then the rights and interests of all parties will be respected and maintained. Thus, if the government, having the title to land subject to the mortgage of the previous owner, should transfer the property, the jurisdiction of the court to enforce the lien would at once attach, as it existed before the acquisition of the property by the government.

"So if property belonging to the government, upon which claims exist, is sold upon judicial decree, and the proceeds are paid into the registry, the court would have jurisdiction to direct the claims to be satisfied out of them."

As is a matter of common knowledge, the property of all the railroads is to be returned to their owners under the presidential proclamation upon the 1st of March. The fact that the collision occurred at a time when the vessel was in the possession of and control of the Director General is not ground for dismissal of the suit, but it must be dismissed on the ground that when the libel was filed the court had no jurisdiction over the vessel, as it was not subject to seizure.

For the reasons stated, the prayer that the ferryboat Mauch Chunk be released from the custody of the marshal should be granted, and the libel be dismissed, without prejudice to the right of the libelant to file another libel at the appropriate time.

A decree may be entered accordingly.