## THE BETTY.

(District Court, N. D. New York. February 10, 1922.)

1. **Towage ⊕=11(10)—Tugs must exhaust all reasonable efforts before abandoning tow.**

   Tugs are *held* to a high degree of diligence in endeavoring to save a tow to which they are attached, or which has gone adrift, and the tow cannot be abandoned until all reasonable efforts for its preservation have been exhausted.

2. **Towage ⊕=11(9)—Tug held negligent in not taking tow to windward shore.**

   Tug towing canal boats across Oneida Lake *held*, under the evidence, negligent, when storm came up, in not changing its course directly into the face of the wind, and taking the tow into calm water on the windward shore.

3. **Towage ⊕=15(2)—Burden on claimant of towing tug to show its fault did not cause injury.**

   When fault on part of tug, towing canal boats, was shown, the claimant of the tug, to escape liability, has the burden of showing that such fault did not cause injury and damage to the canal boats.

4. **Towage ⊕=12(1)—Owner of canal boats being towed across lake held at fault for not having sufficient anchors.**

   Owner of canal boats, wrecked while being towed across Oneida Lake, *held* at fault in not having sufficient anchors in the tow.

5. **Towage ⊕=15(3)—Damages divided, where neither party sustains burden of proving his fault did not cause or contribute to injury.**

   Where both the owner of tow and the owner of the towing tug were at fault, and neither party sustained the burden of showing that his fault did not cause or contribute to the injury and damage from wrecking of the tow, the damages and costs must be divided.

In Admiralty. Libel by James E. Conley against the steam tug Betty. Decree dividing damages and costs.

M. William Bray, of Utica, N. Y. (Thomas C. Burke, of Buffalo, N. Y., of counsel), for libelant.

Foley & Martin, of New York City (James A. Martin, of New York City, of counsel), for claimant.

COOPER, District Judge. The libel in this case was filed by James E. Conley, owner of three canal boats, against the steam tug Betty, for the loss of two of his boats and injury to a third on Oneida Lake, while in the tow of the Betty. On Thursday, September 22, 1921, the libelant's three canal boats, Michael Doran, Robert O'Neil, and H. Guest & Son, loaded with salt and coupled tandem, in the order named, left Mud Lock, on the Barge Canal, near Syracuse, in tow of the Betty on a 300-foot hawser, bound for Waterford. At Three Rivers the Betty picked up another and unloaded boat, the John Lane. This

⊕=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

boat was placed on the starboard side of the tow, with her headline on the head boat and overlapping the second boat.

The boats reached Brewerton, at the westerly end of Oneida Lake, about 1 o'clock on Thursday afternoon. At this time the wind was blowing about 10 or 15 miles an hour. About four hours later, when there was comparatively no wind, they started from Brewerton, easterly across the lake, toward Sylvan Beach, the entrance to the Barge Canal at the easterly end of Oneida Lake. The wind began coming up from the south, and about 9 or 10 o'clock at night, when about 2 miles out from Sylvan Beach, the captain of the tug blew for the tow to throw off the line. The tow not responding, the Betty threw off the line and came back and lay to the leeward alongside the tow. The tug was headed, not toward Sylvan Beach, but toward Brewerton. The tug did not make any effort to push the tow into Sylvan Beach; the captain of the tug claiming that it was impossible to do so under the conditions existing. Two anchors were thrown out, one belonging to the tow, and one to the tug. These anchors were not sufficient to hold the tow and tug, and they drifted slowly during the next six or seven hours, and about 5 or 6 o'clock the following morning went aground on the beach on the north shore of Oneida Lake. While drifting, the tug had put a siphon into first one, then another, of the loaded boats, and had pumped out at intervals whatever water came into the boats.

The weather continued about the same during all that day, the 23d (Friday), and about noon the pumping ceased. Later in the day the tug took the light boat, the John Lane, with all hands, and went to Sylvan Beach. The three loaded boats were then only slightly damaged. The tug never went back to the stranded tow, but left Saturday morning. Saturday was a calm, fair day. Libelant, on arrival at Sylvan Beach on Friday night, communicated as soon as possible with the state tug at Syracuse, and arranged to have that tug come down and rescue the boats. The state tug arrived Saturday night, too late to do anything that day. Sunday morning the state tug went out to the stranded tow, pumped the water out of the boat in deepest water, and brought it into Sylvan Beach. This boat suffered only slight damage. A severe storm then came up, which prevented the state tug returning to the other two boats. Monday the state tug again went out to the tow, but the other two boats had gone to pieces and were wrecks.

The libelant contends that the tug was at fault, because she threw off the hawser and let the tow go adrift, instead of turning the tow due south into the wind and going to the south shore of the lake, where the water would be relatively calm, and also because, when the tug joined the tow on the lee side, it did not endeavor to push the tow into Sylvan Beach into port, but, on the contrary, let it drift to its fate. The claimant contends that the tow became kinked up and unmanageable through the libelant's fault, thus requiring him to throw off the hawser; that it was impracticable to turn the tow at right angles and seek the south shore; and that he could not push the tow into port by attaching the tug on the lee side. Claimant contends that

the chief negligence is that of the libelant, in not having, as he contends, an anchor or anchors in good condition on each boat, claiming that with additional anchors the tow would have remained fast and weathered the storm. The claimant asserts that the sea was very rough and choppy, and a gale was blowing at the rate of 40 miles an hour. The libelant asserts that the wind was blowing about 10 or 15 miles an hour, and that the sea was not very rough.

The fact that it took the tow, with two anchors attached, nearly all night to drift about 2 miles to the beach on the north shore, and that the boats all survived this storm without material damage during that time, defeats the contention of the claimant as to the severity of the storm. The Quickstep, 9 Wall. (76 U. S.) 665, 671, 19 L. Ed. 767. The facts of the case probably are that sufficient wind was blowing and a sufficiently high sea running to cause the tow to be forced a little out of a direct line behind the tug, and thereby to twist the tug a little, so that the wheel occasionally came partly out of the water. This unloaded boat, the John Lane, high out of the water on the windward side of the tow, caught the full force of the wind. The effect of this was to force the tow in a northerly direction. The captain of the tug apparently became alarmed at the strain on his tug by the wind's tending to blow the tow in a northerly direction, and, the tow not responding to his whistle signals to throw off the hawser, he himself caused it to be thrown off. The tow, then being adrift in this storm, speedily became kinked up and unmanageable.

[1] Tugs are held to a high degree of diligence in endeavoring to save a tow to which they are attached, or which has gone adrift, and the tow cannot be abandoned until all reasonable efforts for its preservation have been exhausted. Joseph F. Clinton, 250 Fed. 977, 979, 163 C. C. A. 227; Atkinson v. Scully (D. C.) 246 Fed. 463, 466; In re Moran (D. C.) 120 Fed. 556, 564.

[2] The tug is guilty of negligence under the circumstances of this case. Instead of throwing off the hawser and letting the tow go adrift, the tug should have changed its course and gone at right angles, directly into the face of the wind and toward the southerly shore, where calm water was to be found. The libelant shows by competent witnesses that this was the natural and ordinary thing to do, and that it could be done, not only in the state of wind and wave as to which the libelant testifies, but also in the state of wind and wave which the claimant asserts existed at the time. The claimant offers none to the contrary. The record of this case itself establishes that such procedure was possible because, on the following day, with storm conditions nearly the same, this same tug did tow the light boat, John Lane, directly in the face of the wind in a southerly direction from the north shore of the lake to Sylvan Beach. If it could be done under substantially similar circumstances and for twice the distance on Saturday afternoon, no good reason appears why it could not have been done on Friday night.

[3] There being thus fault on the part of the claimant, the claimant, to escape liability, must affirmatively show that failure to adopt such a course did not in fact cause the injury and damage. Coleman v. Aiken,

242 Fed. 239, 243, 155 C. C. A. 79; The Madison, 250 Fed. 850, 852, 163 C. C. A. 164. This burden the claimant has not met. No weight is given here to the failure of the tug to go out to the tow Saturday, and bring in one or more of the boats, for the reason that the evidence is too meager to establish any fault on the part of the tug.

[4] As to claimant's contention that the libelant was at fault in not having sufficient anchors in his tow, and that, if he had had sufficient anchors, the tow would have ridden the storm, there is much force. The facts undoubtedly are that the tow had but the one anchor, which was used. Had there been an anchor on each boat, as claimant asserts, more anchors would have been used on the night in question. Moreover, there would have been no occasion to endeavor to obtain an anchor from the captain of the light boat, the John Lane, which anchor he said at the time he had in the hold of the boat, but could not get, because the boat was rocking so much in the storm that it was dangerous to go down into the hold.

[5] This was negligence on the part of the libelant. Knowing that he would have to cross the lake, and that storms were likely to arise, knowing it so well that he would not let his wife and children cross the lake on the boat, he should have provided himself with a sufficient number of anchors. The libelant, at fault, like the claimant, has also, like the claimant, failed to show that this fault did not cause or contribute to the injury and damage. The libelant, therefore, is held liable for negligence which contributed to the injury and damage. Neither party, therefore, having borne the burden in this case which was imposed upon him, the damages and costs must be divided. The Westchester, 254 Fed. 576, 578, 166 C. C. A. 134.

A decree may be entered accordingly.