## THE F. I. ROBINSON.

### THE KIKI.

#### No. 13444.

District Court, E. D. New York.
March 6, 1933.

Macklin, Brown, Lenahan & Speer, of New York City (J. Dudley Eggleston, of New York City, of counsel), for libelant.

Single & Hill, of New York City (Thomas H. Middleton, of New York City, of counsel), for respondent.

GALSTON, District Judge.

On August 24, 1932, the tug F. I. Robinson, its master and crew, rendered a salvage service to the yacht Kiki. The fact, the nature, and extent of service are not in issue.

The Kiki was a 45-foot cabin cruiser, mahogany hull, cabin forward, and the engine aft, and was rated at a speed of about 25 to 28 miles an hour. The yacht was adrift in the Hudson river, about 500 feet below Washington Bridge near the Jersey shore, when the tug, then about a half mile north of Washington Bridge on her way to New York City, first saw the yacht aflame. The steam lighter Knickerbocker was also bound down the river, and had started for the Kiki at about the same time. At the time the Knickerbocker got abreast, the flames were observed to be from about 20 to 30 feet high coming from the stern of the boat. At first the Knickerbocker endeavored to extinguish the fire, but presently left without having done so.

The tug Robinson rescued the captain of the yacht from the water, and was informed by him that there were 150 to 200 gallons of gasoline in the tanks of the yacht. The Robinson then anchored the barge which she had in tow, went back to the Kiki, and extinguished the fire, at first standing off 70 feet and then coming alongside after the flames died down. The Robinson carried a crew of nine men. The tug was worth about $13,000.

It seems to be conceded that, had the salvage service not been rendered, the Kiki would have been a total loss.

The controversy relates to the value of the service and how it is to be measured. The libelant sought to establish a value of the Kiki in the condition in which she was at the time after the salvage had been rendered by proving her original cost at between $15,000 and $16,000, and what the cost of repairs would be to restore her to her original condition. The estimated cost of such repairs was $5,250.

The reproduction formula cannot be accepted as a measure of the value of the boat that was saved for the owner. Conceivably, reproduction cost might aid; but certainly the most direct means for making such determination is the market value.

The owner is willing to sell her for $500; and indeed this seems to be much more than a gesture, because he offers to transfer the yacht to the salvors. One cannot ignore the present market conditions as to high-speed motor pleasure boats; and certainly the market for a boat in the condition in which the photographs show this boat to be must be a very limited one indeed. One witness testifies that in his opinion it could not be sold for more than $250. Another of the respondent's witnesses places $500 as the highest conceivable value of the Kiki in her present condition.

On the other hand, one of the libelant's witnesses valued the motorboat at about $2,500, but failed to substantiate the valuation as based on market conditions. Indeed, Mr. Donnelly was not convincing. When asked by the court whether he knew of any actual sales of damaged boats of the class of the Kiki within the last year or so, he said that he did. The examination proceeded:

"Q. Can you name one or two? A. One, there was a 45-foot boat, the Deseo was run through and sunk by a rum runner down in Plum Gut late last fall, and the after half of the boat was damaged to a greater extent than this boat has been by fire. The boat's motors were totally submerged in shallow water. The boat has been fixed up by a boatbuilder and was recently sold for $4,500.

"Q. That is after she had been repaired? A. Yes, sir."

The libelant offered no proof of the sale in the present market of vessels such as the yacht in question that had been damaged by fire.

[2-4] The burden of establishing the value is, of course, upon the libelant. Lincoln S. S. Line v. United States (C. C. A.) 7 F.(2d) 886; The Joseph F. Clinton (C. C. A.) 250 F. 977. This burden has not been successfully sustained in the contention that the property saved was worth $2,500—the Donnelly estimate—or any sum in excess thereof.

I am constrained, therefore, to accept the proof as to value offered by the respondent; and accordingly find that the value of the salvaged property in its damaged condition was $500. The services rendered were, of course, meritorious. The vessel was in imminent peril of destruction, and there was some hazard to life and property in extinguishing the fire.

Accordingly, I think that the libelant is entitled to one-half of the value of the salvaged property. The respondent suggests that the award in the circumstances should not be in excess of $300. I accept that view. The award may be distributed in the proportion of one-third to the boat and two-thirds to the master and crew, to be apportioned among them.

A decree in accordance with the foregoing opinion may be entered.

Settle decree on notice.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.