THE CONNEMARA.

SINCLAIR & Another *v.* COOPER & Others.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF LOUISIANA.

Decided April 30th, 1883.

*Salvage—Statutes.*

1. A ship, towed by a steam tug down a river, came to anchor in the evening, and the tug was lashed to her side. In the night, no watch having been

set, a passenger on board of her was awakened by a smell of smoke aris-
ing from a fire, which had broken out in part of the cargo stowed in the
poop, and which endangered the ship and cargo. He gave the alarm to
the officers and crews of the ship and of the tug ; and he and the officers,
crew and passengers of the tug, working together, and by means of a
steam pump and hose upon the tug, and unaided by the officers and crew
of the ship, put out the fire in twenty minutes: *Held,* That this was a
salvage service, and that the passenger on board the ship, as well as the
owner, officers, crew and passengers of the tug, might share in the sal-
vage.

2. Under the act of Congress of 16th February, 1875, c. 77, a decree of salvage
by the circuit court is not to be altered by this court for excess in the
amount awarded, unless the excess is so great that, upon any reasonable
view of the facts found, the award cannot be justified by the rules of law
applicable to the case.

In admiralty. Libel for salvage. Decree below for libel-
lants, and appeal. The act of salvage was done on a voyage
down the river Mississippi, the vessel being fully freighted for
Liverpool. The salvors were a tugboat, the officers and crew
of the vessel, and passengers on the vessel. The main conten-
tion was as to the amount of the salvage and as to the right of
a passenger to participate.

*Mr. P. Phillips* and *Mr. W. Hallett Phillips* for appellants.
—The tugboat and crew are not entitled to salvage : only to a
liberal renumeration *pro opere et labore.* The *Clifton,* 3 Hag-
gard Admr. 117, cited in Abbott on Shipping, marg'l p. 557.
This court defines the elements of salvage service to be " dan-
ger to property, value, risk of life, skill, labor, and the dura-
tion of the service." *Post* v. *Jones,* 19 How. 150, at 161. It
was long doubted whether a tug, while engaged in the service of
a ship, could claim salvage. It is well settled that the fact of
the service diminishes the quantum of reward. James' Salvage,
40 ; Dr. Lushington in *The Wm. Brandt.* The main ingredient,
danger, being absent in ordinary services rendered by tugs,
large amounts should not be awarded. *The Birdie,* 7 Blatch-
ford, 238. Sailing vessels are liberally rewarded on account of
the danger which they run. *The Blackwell,* 10 Wall. 1. In the
present case the tug ran no danger whatever. The only pos-
sible ground to be urged in support of the decree is the *value*

*of the ship and cargo ;* but this should not constitute the main consideration of the case. Say the Privy Council: "The rule seems to be that, though the value of the property salved is to be considered in the estimate of the remuneration, it must not be allowed to raise the quantum to an amount altogether out of proportion to the services actually rendered." *The Amerique,* L. R. 6 P. C. Appeals, 468, 472. See also *The Henry,* 2 Eng. Law and Eq. 565 : Parsons on Shipping, 283. The decree in allowing salvage to a passenger is sustainable on no principle. See 3 Kent. Com. marg. p. 246. In a case where an officer in the Royal Navy rendered assistance to the ship in distress, of which he was a passenger, the court said : "No case has been cited where such a claim by a passenger has been established. When there is a common danger it is the duty of every one on board to give all the assistance he can." *The Branston,* 2 Haggard, 3 ; *The Clarita,* 23 Wall. 1 ; *The Vrede,* 1 Lush. 322. In the latter case, Dr. Lushington is thus reported : " Services rendered by passengers must have occurred over and over again, yet, except the cases of the Branston and the Salacia, there is apparently no precedent on which a claim for salvage by a passenger has been prosecuted in this court." The exception to the general rule is again expressed in these terms : " If they assume extraordinary responsibility and devise original and unprecedented means by which the ship is saved after her officers have proved themselves powerless." The Great Eastern U. S. D. C. for N. G., per Shipman.

*Mr. Richard De Gray, Mr. J. R. Beckwith* and *Mr. Chas. W. Hornor* for appellees.

Mr. Justice Gray delivered the opinion of the court.

This is a libel in admiralty by the owner, master and crew of the steam towboat Joseph Cooper, Jr., for salvage on the ship Connemara and cargo. Louis Wurtz and Henry Holser, passengers on the towboat, and John Evers, a passenger on the ship, were permitted to file intervening libels. The value of the ship and cargo was agreed to be $236,637. The district court awarded as salvage eight per cent. on that value, or

$18,930.96; and the owners and claimants of the ship appealed to the circuit court.

The circuit court found the following facts: On the 15th of April, 1879, the ship Connemara, being in the port of New Orleans, with her cargo on board, consisting chiefly of pressed cotton, and bound on a voyage for Liverpool, England, engaged the towboat Joseph Cooper, Jr., to tow her to the mouth of the Mississippi River, and was by her towed about twenty-six miles down the river, and came to anchor about eight o'clock in the evening opposite the Belair plantation. About eleven o'clock at night, the ship, with the towboat lashed to her side, was lying with her bow to the current and her stern to the wind, which was blowing stiffly; no watch had been set; and the two mates and the boatswain of the ship were under the influence of liquor, and the captain and the rest of the crew were sober. Evers, a passenger on board the ship, being then asleep in the second mate's cabin, was awakened by a smoke of burning cotton, sprang from his berth, and gave the alarm to the officers and crews of the ship and of the towboat. The fire was not in the hold, but in the poop above the main deck, and near the door, which could be opened by raising the latch; and the fire, when discovered, was confined to three bales of cotton, a spare sail, and two coils of tarred rope. There were one hundred and twenty-seven bales of cotton stowed in the poop. The fire was not caused by the fault of the towboat, or by any defect in her equipment or management. The towboat had on her deck a pump worked by steam, and hose long enough to reach the fire on the ship. As soon as the alarm was given, and by the exertions of the towboat's officers and crew, of her two passengers and of Evers, the hose was laid from the pump to the deck of the ship, and by their use of this pump and hose the fire was put out in fifteen or twenty minutes, without any damage to ship or cargo, beyond the burning of the sail and the two coils of rope, the partial burning of the three bales of cotton, and the charring of a part of the upper deck or roof of the poop. In extinguishing the fire, there was no serious risk of loss or damage to the towboat, or of injury to life or limb of any of the salvors. No efficient

effort was made by the officers or the crew of the ship to extinguish the fire.   The ship had on her deck, within fifteen feet of the fire, two tanks of water, holding four hundred gallons each, one of which was full and the other half full, with six buckets near the fire and seven above, and a pump by which water could have been pumped upon the upper deck.   At the time of the fire, the steam tug Harry Wright was lying about a quarter of a mile off; and there was a telegraph station on the Belair plantation, from which a dispatch could have been sent to the city of New Orleans for aid to put out the fire, and efficient aid might have reached the ship from the city in two hours and a half after notice.  The agreed value, as aforesaid, of the Connemara and cargo, and the names and monthly wages of each of the officers and crew of the Joseph Cooper, Jr., were also stated in the findings of fact.

From these facts the circuit court made and stated the following as conclusions of law : 1st.  The services rendered by the towboat Joseph Cooper, Jr., her officers and crew, and the three passengers, Wurtz, Holser and Evers, in the extinguishment of the fire on board the ship Connemara, were a salvage service.   2d.  A gross salvage on the ship and cargo of $14,198, or six per cent. on the value thereof, should be allowed.   3d. This salvage should be equally divided, half to the owner of the towboat and half to the salvors.  4th.  The moiety allowed to the salvors should be distributed among them, in proportion to their monthly wages, the passengers Wurtz and Evers to rank as pilots, and Holser as a steersman.

A decree was entered accordingly, and the claimants appealed to this court.   A motion to dismiss the appeal for want of jurisdiction was made and overruled at October term, 1880. _The Connemara_, 103 U. S. 754.

The errors assigned are: First. That the facts found do not constitute a salvage service.   Second. That if a salvage service, it is salvage of the lowest grade, and the amount allowed is exorbitant.   Third. That the amount allowed to John Evers, he being a passenger on board the Connemara, is not warranted by law.

Neither of the grounds assigned will justify this court in reversing the decree.

If the fire, which had made such headway as to wholly consume the two coils of tarred rope and the spare sail, and to partly destroy three bales of the cotton stowed in the, poop, had not been promptly discovered and extinguished, there was imminent danger that it would extend to the rest of that cotton, and, fanned by the stiff breeze which was blowing lengthwise of the ship, destroy or greatly damage the ship and the whole cargo. Saving a ship from imminent danger of destruction by fire is as much a salvage service as saving her from the perils of the seas. *The Blackwell*, 10 Wall. 1. The shortness of the time occupied in rescuing the ship from danger does not lessen the merit of the service. *The General Palmer*, 5 Notes of Cases, 159, note; *The Syrian*, 2 Marit. Law Cas. 387; *Sonderburg* v. *Ocean Towboat Company*, 3 Woods, 146. The danger being real and imminent, it is not necessary, in order to make out a salvage service, that escape by other means should be impossible. *Talbot* v. *Seeman*, 1 Cranch, 1, 42.

The fact that no serious risk was incurred on the part of the salvors does not change the nature of the service, although an important element in estimating its merit and the amount of the reward. As has been well said by Mr. Justice Curtis,

"The relief of property from an impending peril of the sea, by the voluntary exertions of those who are under no legal obligation to render assistance, and the consequent ultimate safety of the property, constitute a case of salvage. It may be a case of more or less merit, according to the degree of peril in which the property was, and the danger and difficulty of relieving it. But these circumstances affect the degree of the service, not its nature." *The Alphonso*, 1 Curtis, 376, 378.

The contract of the towboat and her officers and crew was to tow the ship, and did not include the rendering of any salvage service, by putting out fire or otherwise. Such a service, which, by the use of the steam pump and engine of the towboat, rescued the ship from an unforeseen and extraordinary peril, gave the owner as well as the officers and crew of the

towboat a right to salvage. *The William Brandt, Jr.*, 2 Note of Cases, Supplement, lxvii. ; *The Saratoga*, Lush. 318 ; *The Minnehaha*, 15 Moore P. C. 133 ; *S. C.* Lush. 335 ; *The Annapolis*, Lush. 355, 361, 372. And no doubt is or could be raised as to the right of the passengers on the towboat, whose exertions contributed to putting out the fire, to share in the salvage awarded to her officers and crew. *The Cora*, 2 Pet. Adm. 361 ; *S. C.* 2 Wash. C. C. 80 ; *The Hope*, 3 Hagg. Adm. 423.

Evers, the passenger on the *Connemara*, was also entitled to share in the salvage. A passenger cannot indeed recover salvage for every service which would support a claim by one in no wise connected with the ship. In the case of a common danger, it is the duty of every one on board the ship to give every assistance he can, by the use of all ordinary means in working and pumping the ship, to avert the danger. Yet a passenger is not, as the officers and crew are, bound to stand by the ship to the last ; he may leave her at any time and seek his own safety ; and for extraordinary services, and the use of extraordinary means, not furnished by the equipment of the ship herself, by which she is saved from imminent danger, he may have salvage. *Newman v. Walters*, 3 B. & P. 612 ; *The Branston*, 2 Hagg. Adm. 3, note ; *The Salacia*, 2 Hagg. Adm. 262, 269 ; *The Vrede*, Lush. 322 ; *The Pontiac*, 5 McLean, 359, 363 ; *The Great Eastern*, 2 Marit. Law Cas. 148 ; *S. C.* 11 Law Times (N. S.), 516 ; *The Stella Marie*, Young's Adm. 16 ; 3 Kent Com. 246. The services of Evers were of peculiar value, and involved the use of means outside the ship. His promptness and vigilance gave the alarm, which, by the supineness and neglect of the officers and crew of the ship, might not otherwise have been given in time to save her. This might not of itself have entitled him to reward ; but beyond this he exerted himself, as if he had been one of the officers and crew of the towboat, in the use of the steam pump and hose on board of her, by which the fire on the ship was effectually subdued.

It may also be observed that this case comes before us on the appeal of the owners of the ship ; and that there is no controversy, either between Evers and the other salvors, or between

the salvors who gave their personal exertions and the owners of the towboat whose machinery was used, as to the distribution of the salvage.

The services performed being salvage services, the amount of salvage to be awarded, although stated by the circuit court in the form of a conclusion of law, is largely a matter of fact and discretion, which cannot be reduced to precise rules, but depends upon a consideration of all the circumstances of each case. *The Blaireau*, 2 Cranch, 240, 267; *The Adventure*, 8 Cranch, 221, 228; *The Emulous*, 1 Sumner, 207, 213; *The Cora*, above cited; *Post* v. *Jones*, 19 How. 150, 161.

In *The Sybil*, 4 Wheat. 98, Chief Justice Marshall said:

"It is almost impossible that different minds contemplating the same subject, should not form different conclusions as to the amount of salvage to be decreed and the mode of distribution."

And by the uniform course of decision in this court, during the period in which it had full jurisdiction to reverse decrees in admiralty upon both facts and law, as well as in the Judicial Committee of the Privy Council of England, exercising a like jurisdiction, the amount decreed below was never reduced, unless for some violation of just principles, or for clear and palpable mistake or gross over-allowance. *Hobart* v. *Drogan*, 10 Pet. 108, 119; *The Comanche*, 8 Wall. 448, 479; *The Neptune*, 12 Moore P. C. 346; *The Carrier Dove*, 2 Moore P. C. (N. S.) 243; *S. C.* Brown. & Lush. 113; *The Fusilier*, 3 Moore P. C. (N. S.) 51; *S. C.* Brown. & Lush. 341.

By the act of Congress of 16th February, 1875, c. 77, the appellate power of this court is restricted within narrower bounds; its authority to revise any decree in admiralty of the circuit court is limited to questions of law; and the finding of facts by that court is equivalent to a special verdict, or to facts found by the court in an action at law when a trial by jury is waived. *The Abbottsford*, 98 U. S. 440; *The Francis Wright*, 105 U. S. 381; *Sun Insurance Company* v. *Ocean Insurance Company*, 107 U. S. 485.

The effect of this change may be illustrated by referring to

the revisory power of the courts in actions at law tried by a jury. The facts are decided by the jury in the first instance. If the jury return a general verdict, clearly against the weight of evidence, or assessing exorbitant damages, the court in which the trial is had may set aside the verdict and order a new trial. But a court of error, to which the case is brought by bill of exceptions or appeal on matter of law only, cannot set aside the verdict, unless there is no evidence from which the conclusion of fact can be legally inferred. *Parks* v. *Ross*, 11 How. 362; *Schuchardt* v. *Allens*, 1 Wall. 359.

Before the act of 1875, this court, upon an appeal in a case of salvage, gave the same weight, and no more, to the decree of the court below, that a court of common law would allow to the verdict of a jury; and might revise that decree for manifest error in matter of fact, even if no violation of the just principles which should govern the subject was shown. *Post* v. *Jones*, 19 How. 150, 160. Since the act of 1875, in cases of salvage, as in other admiralty cases, this court may revise the decree appealed from for matter of law, but for matter of law only; and should not alter the decree for the reason that the amount awarded appears to be too large, unless the excess is so great that, upon any reasonable view of the facts found, the award cannot be justified by the rules of law applicable to the case.

In the present case, a vessel and cargo of great value were rescued from imminent danger by the energetic efforts of the salvors; and the amount of salvage awarded is less than one-sixteenth of the value of the property saved. Although upon the circumstances of the case, so far as they can be brought before us by the summary of them in the findings of facts by the circuit court, we might have been better satisfied with an award of a smaller proportion, we cannot say that the amount awarded is so excessive as to violate any rule of law.

*Decree affirmed.*