Raymond PALMER, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–86–616.

Court of Criminal Appeals of Oklahoma.

Feb. 23, 1990.

Rehearing Denied April 6, 1990.

Gotcher, Brown and Bland, McAlester, for appellant.

Robert H. Henry, Atty. Gen., Terry J. Jenks, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

Appellant, Raymond Palmer, was tried by a jury in Bryan County District Court, Case no. CRF–85–33, and convicted of First Degree Murder. 21 O.S.Supp.1982, § 701.7(C). The jury set punishment at life imprisonment, and the judge sentenced appellant accordingly. From this judgment and sentence, he appeals.

At approximately 6:00 p.m. on January 23, 1985, Mr. Waco Howell, an Emergency Medical Technician for Bryan County Ambulance, responded to a call for help from an individual in an apartment in Calera. When he arrived, appellant was administering mouth to mouth resuscitation to fifteen month old James "Jamie" Cody Scoggins, the child of appellant's roommate, Ms. Melba Scoggins. The baby, bruised over his neck, chin and legs, was limp and not breathing. The baby was taken by ambulance to the hospital where, after a one hour attempt to revive him, he was pronounced dead.

Dr. Larry Balding, a forensic pathologist at the Chief Medical Examiner's office in Oklahoma City, performed an autopsy to determine the cause of death. He testified that the child's back had been broken, causing a tear in the aorta which led to fatal internal hemorrhaging. In his opinion, such an injury could not have been caused by a simple fall, but was probably the result of a great deal of force having been exerted against the child's back.

In an interview videotaped prior to trial, appellant claimed that Jamie's injuries were accidental. He explained to Sheriff Gary McCain that he was preparing Jamie and his brother for a bath, when Jamie began to cry. Appellant picked up the child, shook him, and told him to quit crying. The child then bit his tongue and blood started coming out of his mouth.

Appellant took Jamie into the next room and sat him in the doorway. He fell over a couple of times, bending his head against the doorjamb, and continued crying. Appellant explained that he then picked Jamie up and put him down again. When he did, Jamie's legs bent backwards and there was a loud pop. The child began breathing heavily and then went limp. Appellant took him to the bathroom and shook him in an effort to revive him. Appellant stated that while in the bathroom, he was shaking Jamie "pretty good" and "might have bounced him up against the wall or something."

Appellant was charged with first degree murder, on the theory that his actions rose to the level of willful and unreasonable use of force constituting child abuse, and it was the cause of Jamie's death. *See* 21 O.S. Supp.1982, § 701.7(C). *See also* 21 O.S. 1981, § 843. In defense, appellant argued that he had not handled the child in an abusive manner. He claimed that Jamie suffered from "discitis," and that his condition rendered his spine and surrounding cartilage especially weak and susceptible to injury. Appellant claimed that he exerted a reasonable amount of force in "disciplining" Jamie; and without the preexisting discitis, James would be alive and well.

To support his theory of defense, appellant called Dr. Bruce Hinkley, an orthopedic surgeon, as a witness. According to Dr. Hinkley, a bacteria found in the child's

blood during the autopsy indicated the presence of infection somewhere in the body. He opined that this infection could have been discitis, but admitted that such a determination could not have been made with any certainty by Dr. Balding, the pathologist, since the infected tissue would probably have "burned out" by the time the autopsy was performed. Dr. Hinkley acknowledged that there had been no medical determination that the deceased child was suffering from discitis at the time of the back injury and subsequent death. He then went on to surmise that, given appellant's description of how he had handled Jamie, the only explanation for the extent of the child's injuries was that discitis had weakened the spinal column. Dr. Hinkley did not personally examine the deceased. Therefore, his testimony was based solely on his review and interpretation of Dr. Balding's written autopsy report.

■ For his first proposition, appellant argues that the trial court committed reversible error in refusing to allow the defense to admit certain evidence. A few months after appellant was arrested and jailed, the Bryan County District Attorney's office apparently filed child abuse charges against Ms. Melba Scoggins, the deceased child's natural mother. The alleged incident of abuse involved Ms. Scoggins and her other small child; the charges were soon dropped because of insufficient evidence. Appellant made several unsuccessful attempts to place this evidence before the jury, one of which involved calling to the witness stand Ms. Kay Wallace, a Department of Human Services case worker. Defense counsel stated that if allowed to testify, Ms. Wallace would verify the filing of the abuse charges and describe the nature and location of the bruises found on the child whom Ms. Scoggins was charged with having abused. He argued that this evidence was relevant and admissible because it showed the similarities between the deceased's bruises and those of the other child, and thus tended to prove that Ms. Scoggins and not appellant had been the one who had abused Jamie.

As appellant explains, relevant evidence is evidence which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." 12 O.S. 1981, § 2401. *See also Kennedy v. State*, 640 P.2d 971 (Okl.Cr.1982). The issue in this case was not whether appellant or another party inflicted the bruises found on Jamie Scoggins, nor whether appellant or another party was guilty of any previous abuse which this child might have suffered. Rather, the issue was whether appellant's actions on January 23, 1985, caused the child's death. Evidence showing that after appellant's arrest and incarceration, Jamie's mother was charged with abusing her other child, and that this abuse caused bruises similar to those found on Jamie at the time of his death, did not tend to prove any fact of consequence to the determination of the issues at trial in the instant case. The judge properly exercised his discretion in denying the admission of this evidence. *See Camp v. State*, 664 P.2d 1052, 1053 (Okl.Cr.1985).

■ Appellant claims in his second proposition that the trial court erred in allowing the admission of other crimes evidence. He attacks as prejudicial the introduction of a number of different statements which he made to Mr. Ken Letterman, an O.S.B.I. agent, and Mr. Gary McCain, Sheriff of Bryan County at the time of Jamie's death. Because only two of these statements fell within the category of "other crimes or acts," *see* 12 O.S.1981, § 2404(B), we will confine our review to them.

During the videotaped interview with Sheriff McCain, appellant described a previous incident between him and one of his co-workers:

[H]e made a remark and I made one too, all in fun, anyhow, he grabbed up a crescent wrench and combination wrench and was going to hit me with it. Told me he was going to work me over with it. I told him, I said, well, if you are going to do it, do it. And we got into a scuffle. But I didn't hit him. All we did was just

went down to the floor and I held on to him.

Appellant unsuccessfully filed a motion in limine to prevent this and other portions of the videotape from being shown to the jury. Over appellant's objection at trial, the entire contents of the tape, including the above quoted statement, was played for the jury.

The second statement whose introduction appellant attacks was one which he had made to Agent Letterman during a non-taped interview. Agent Letterman took the stand and described what appellant had told him about the events leading up to Jamie's death. He then made the following statement about which appellant now complains: "[Appellant] went on to tell me that he had slapped Jamie in the mouth in the past ... about four weeks prior ..." Defense counsel interposed an unsuccessful objection to this statement on the grounds that it constituted other crimes evidence for which no *Burks* notice had been filed.

Assuming *arguendo* that these statements could be construed as improperly admitted evidence of other crimes or acts, we nonetheless conclude that any error resulting from their admission was harmless beyond a reasonable doubt. *See Master v. State*, 702 P.2d 375, 580 (Okl.Cr.1985); *Mahorney v. State*, 664 P.2d 1042, 1046 (Okl. Cr.1983). The evidence of appellant's guilt was overwhelming, and he received the minimum sentence for the crime of which he was convicted.

■ In his third proposition, appellant contends that his videotaped confession was involuntary and thus should have been suppressed. During an *in camera* hearing to determine the voluntariness of the taped confession as well as other issues concerning this recorded statement, defense counsel asked appellant whether Sheriff Gary McCain, the interviewer, had coerced the appellant into speaking. Appellant responded as follows:

The first time [Sheriff McCain] told me that he would charge me with first degree murder that I didn't have to worry about it because when I went down on it I wouldn't have to worry too long, they

would kill me in prison. And the second time I was told that if you know, if it was an accident, you know, they would help me out.

On the basis of this testimony, appellant asserts that his confession was involuntary. Again, we must disagree.

A confession is deemed voluntary if "it is the product of an essentially free and unconstrained choice by its maker." *Young v. State*, 670 P.2d 591, 594 (Okl.Cr.1983). Voluntariness is determined by a consideration of the totality of the circumstances. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). *See also Lee v. State*, 637 P.2d 879 (Okl.Cr. 1981). After considering all the facts and circumstances in this case, we conclude that the testimony quoted above simply does not support appellant's assertion that his confession was involuntary. Further, the trial court and then the jury, under proper instructions, concluded that appellant's statement was voluntarily made. *See Smith v. State*, 674 P.2d 569 (Okl.Cr. 1984).

■ Appellant also argues that the principles set forth in *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), were violated because the trial court refused to appoint a psychiatrist to aid him in preparing his involuntariness claim. To receive state funded psychiatric assistance, *Ake* requires that a defendant make a "preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial...." *Id.* at 74, 105 S.Ct. at 1091. Appellant did not make his sanity an issue at trial and thus did not meet this threshold requirement.

For this fourth proposition, appellant argues that the trial court erred in failing to instruct the jury on the lesser included offenses of second degree "depraved mind" murder and second degree manslaughter. A timely and specific objection preserved this alleged error for review.

■ Appellant's characterization of second degree murder as a "lesser-included offense" of first degree murder of a child is an erroneous description of the relation-

ship between the two charges. *See* and *compare* 21 O.S.Supp.1982, § 701.7(C) and 21 O.S.1981, § 701.8. Second degree murder requires proof of an additional element not required in a subsection (C) first degree murder charge. *See Jennings v. State,* 643 P.2d 643, 645 (Okl.Cr.1982); see also *Frank v. Alford,* 820 F.2d 345 (10th Cir. 1987). The trial court was correct in refusing to instruct on second degree murder. In regard to the claim that an instruction on second degree manslaughter should have been given, we find the general rule applies which is that one is required only when warranted by the evidence. *See Hale v. State,* 750 P.2d 130 (Okl.Cr.1988); *Dilworth v. State,* 611 P.2d 256, 259 (Okl.Cr. 1982). After reviewing the record, we conclude that the evidence presented did not support an instruction on second degree manslaughter. The trial court's ruling was proper in refusing to present either of these theories to the jury. *See Rumbo v. State,* 750 P.2d 1132, 1133 (Okl.Cr.1988).

Appellant argues in his fifth proposition that the trial court committed error by giving the jury some instructions that were incorrect and confusing. We will address only appellant's contention regarding instruction number six—the excusable homicide instruction—because his remaining allegation is unsupported by relevant citation of authority. *See Kennedy v. State,* 640 P.2d 971 (1971). A timely and specific objection to instruction number six preserved this alleged error for review.

■ Essentially, appellant argues that the trial court's excusable homicide instruction should have followed the language of 21 O.S.1981, § 731(1), the statute defining excusable homicide. The Court gave OUJI–CR 725 (1981), the uniform instruction on this defense. The general rule is that once the court decides that the jury should be instructed on a particular subject, the uniform instruction *"shall* be used unless the court determines that it does not accurately state the law." 12 O.S.1981, § 577.2. Therefore, the court correctly administered the uniform instruction rather than a paraphrase of the statute, and we find it was appropriate according to the facts in this case.

■ For his sixth proposition, appellant claims that jurors who expressed an unwillingness to impose the death penalty were improperly excluded under *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). This issue is moot because the jury returned a sentence of life imprisonment. *See Moore v. State,* 761 P.2d 866, 878 (Okl.Cr.1988). *See also Watkins v. State,* 744 P.2d 967, 970 (Okl.Cr. 1987).

■ In his seventh and final proposition, appellant argues that the evidence presented was insufficient to support his first degree murder conviction. He claims that the evidence against him was entirely circumstantial, and that the standard for determining its sufficiency, therefore, is whether it excluded every reasonable hypothesis except that of his guilt. *See Riley v. State,* 760 P.2d 198 (Okl.Cr.1988). Assuming *arguendo* that all of the evidence presented against appellant was indeed circumstantial, we conclude that it was sufficient under the "reasonable hypothesis" test to support his first degree murder conviction.

Finding no error warranting reversal or modification, judgment and sentence is AFFIRMED.

PARKS, P.J., LANE, V.P.J., and LUMPKIN and JOHNSON, JJ., concur.