**Daniel Juan REVILLA, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–87–993.

Court of Criminal Appeals of Oklahoma.

April 22, 1994.

Rehearing Denied June 15, 1994.

Joe Burch and Ray Jones, Altus, for appellant at trial.

Terry J. Hull, Asst. Appellate Public Defender, Norman, for appellant on appeal.

Steve Suttle, Dist. Atty., David Thomas and John White, Asst. Dist. Attys., Altus, for appellee at trial.

Robert H. Henry, Atty. Gen., Sandra D. Howard, Asst. Atty. Gen., Oklahoma City, for appellee on appeal.

## OPINION

LUMPKIN, Presiding Judge:

Appellant Daniel Juan Revilla was tried by jury and convicted for the crime of Murder in the First Degree (21 O.S.Supp.1982, § 701.7), Case No. CRF–87–18, in the District Court of Jackson County. The jury recommended

the death penalty and the trial court sentenced accordingly. It is from this judgment and sentence that Appellant appeals.

Appellant was convicted of the child abuse murder of thirteen (13) month old Mark Gomez. On January 26, 1987, Appellant took his girlfriend, Michelle McElmurry, to the Jackson County Health Department for a checkup. The decedent, Michelle's son, was left alone at the house shared by Appellant and McElmurry. Approximately 40 minutes later, Appellant ran through the lobby of the county hospital carrying the decedent in his arms, yelling that he had swallowed his tongue and was not breathing. Subsequent attempts by hospital medical personnel were unsuccessful in reviving the unconscious infant. Hospital personnel noticed numerous wounds and injuries to the decedent's body, including bruises on his back, blisters on his chest, peeling skin on his chest and groin area, burns on his thighs and ear, and lacerations on his thighs and arms. The autopsy report showed a swelling and bleeding of the brain and the complete severance of his liver.

The Appellant denied causing the decedent's death and explained that when he returned home from dropping Michelle off at the clinic, he saw the decedent laying on the floor. The decedent was pale and appeared not to be breathing. Appellant attempted to revive the decedent by striking him in the abdomen. When the decedent gasped for air, Appellant struck him again. Unable to start him breathing, Appellant stated that he began to panic, grabbed the decedent, pulled his clothes off, rushed him into the bathroom, placed him in the tub, leaned over to turn on the cold water but accidentally turned on the hot water, scalding the infant. Turning the water off, he wrapped the decedent in a blanket, and in his rush out of the bathroom, struck the infant's head on the door frame. Exiting the house in a hurry, he tripped and fell on top of the decedent onto a concrete cellar. Appellant got up and rushed the decedent to the hospital.

### JURY SELECTION ISSUES

In his first assignment of error, Appellant contends that the trial court erred in excusing a potential juror for stating that she could not fully consider the death penalty. A potential juror cannot be excluded for cause "simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." *Witherspoon v. Illinois*, 391 U.S. 510, 522, 88 S.Ct. 1770, 1776, 20 L.Ed.2d 776, 785 (1968). The most that can be required of a potential juror is that they be willing to consider all the penalties provided by law and that they not be irrevocably committed before the trial has begun. *Banks v. State*, 701 P.2d 418, 422 (Okl.Cr.1985). We must look to the entirety of the juror's voir dire examination to determine if the trial court properly excused the juror for cause. *Castro v. State*, 844 P.2d 159, 166 (Okl.Cr.1992); *Davis v. State*, 665 P.2d 1186, 1194 (Okl.Cr. 1983), *cert. denied* 464 U.S. 865, 104 S.Ct. 203, 78 L.Ed.2d 177 (1983). As the trial court personally observes the jurors and their responses, this Court will not disturb its decision, absent an abuse of discretion. *Rojem v. State*, 753 P.2d 359, 363 (Okl.Cr. 1988).

In the present case, the prospective jurors were asked if they could consider both life imprisonment and the death penalty as possible sentences. Mrs. Powell stated "I'm afraid not". Upon further questioning by counsel for both the State and the defense, she stated that her personal feelings about capital punishment "might possibly" interfere with her ability to sit as a fair and impartial juror and that she "wouldn't want it on my conscience that I, to think that I might have cause someone's death". When asked by the trial court whether she could consider the punishments of both life imprisonment and death, Mrs. Powell at first responded "[I]t would be a terribly hard decision for me to have to make" and "I'd just rather not have to make that decision." When the trial court again asked Mrs. Powell if she could consider giving Appellant life imprisonment or death, she responded, "No, I'm sorry."

We find Mrs. Powell's answers showed that she was irrevocably committed to vote against the death penalty, regardless of the law, and that her views about capital punishment would have prevented, or substantially impaired, her performance as a juror.

Therefore, the trial court properly dismissed her for cause.

■ Appellant contends in his second assignment of error that the trial court erred in failing to grant his request for individual voir dire of prospective jurors. He argues that such a procedure was necessary due to extensive pretrial publicity. This argument was rejected in *Vowell v. State*, 728 P.2d 854, 858 (Okl.Cr.1986), wherein we stated that "[t]he existence of extensive pretrial news coverage does not itself demand individual or sequestered voir dire.... The crux of the issue is whether defendant can receive fair and impartial jurors". In *Sellers v. State*, 809 P.2d 676, 682 (Okl.Cr.1991), we quoted to *Foster v. State*, 714 P.2d 1031, 1037 (Okl.Cr. 1986), *cert. denied* 479 U.S. 873, 107 S.Ct. 249, 93 L.Ed.2d 173 (1986), noting that such practice may be allowed by a trial judge, but "it is an extraordinary measure" and "unless the danger of prejudicing the jurors by exposure to damaging information is a grave problem or some special purpose would be served, it is unlikely that individual voir dire would be justified".

In the present case, we find no error in not allowing the procedure. The record reflects an exhaustive voir dire was conducted and an apparently impartial jury was selected. Accordingly, this assignment of error is denied.

### FIRST STAGE TRIAL ISSUES

■ In his fourth assignment of error, Appellant alleges the felony information failed to clearly state the offense with which he was charged and when combined with the jury instructions, allowed for a guilty verdict without a finding of intent. The felony information filed against Appellant read in pertinent part:

> ... Daniel Juan Revilla did commit the crime of Murder in the First Degree ... [by] unlawfully, willfully, wrongfully, intentionally, and feloniously without authority of law, effect the death of Mark Gomez by striking, torturing, hitting, burning, and beating about the head, body and abdomen, thereby inflicting injuries upon the said Mark Gomez, a child under the age of 18 years, to-wit: 13 months of age, and did then and there use unreasonable force upon and against said child, then and there and thereby inflicting certain mortal wounds in the body of said Mark Gomez, from which mortal wounds the same Mark Gomez did languish and die on the 26th day of January, 1987. (O.R. 1, 67).

Appellant argues that this information was flawed as it did not specify whether the child abuse he was charged with committing was a misdemeanor or felony. Title 21 O.S.1981, § 701.7(C), sets forth the offense of child abuse murder. It provides that a person commits first degree murder when the death of a child results from the injuring, torturing, maiming or use of unreasonable force by the defendant pursuant to Section 843 of title 21. By charging Appellant with first degree murder by the use of unreasonable force and the injuring and torturing of the victim, it is clear that the child abuse alleged is that of felony child abuse. Contrary to Appellant's next argument, it is not reasonable to presume that he was misled into believing that he was being charged with the first degree malice aforethought murder of Mark Gomez by the language that he "intentionally ... effect[ed] the death of Mark Gomez". By omitting any reference to the terms "malice aforethought" in the felony information, it is clear that Appellant was not charged under 21 O.S.1981, § 701.7(A).

Further, the instructions clearly informed the jury that Appellant was charged with the crime of child abuse murder. As such, the State was not required to prove the element of intent to kill, but was required to prove that Appellant "willfully" or "maliciously" injured, tortured, maimed or used unreasonable force upon the victim. *See Drew v. State*, 771 P.2d 224, 228 (Okl.Cr.1989) (mens rea element of 21 O.S.1981, § 701.7(C) supplied by 21 O.S.1981, § 843). Finding no error in the felony information or instructions warranting reversal, this assignment of error is denied.

■ Appellant next raises several challenges to the jury instructions. Initially, he alleges error in the trial court's refusal to give his requested instruction on the State's burden of proving that Appellant did not commit excusable homicide. The record re-

flects that Appellant requested three (3) instructions on the defense of excusable homicide. The first two instructions were given to the jury and the third, taken verbatim from Oklahoma Uniform Criminal Jury Instructions—Criminal No. 727,[1] was rejected without comment. Appellant argues that by refusing to give this instruction, the court relieved the State of its constitutional burden of proof on the mens rea element of first degree murder charge. We disagree.

The jury received two (2) instructions on excusable homicide including Instruction No. 10 which stated:

A homicide is excusable when committed by lawful means, with usual and ordinary caution, and without any unlawful intent, but occurs by accident and misfortune while doing some lawful act. If the jury has a reasonable doubt that the death of Mark Gomez was the result of accident or misfortune, then you should find the defendant not guilty. (O.R. 323).

Additionally, the jury was given Instruction No. 4 which stated that an accused may not be convicted of first degree child abuse murder unless the State has proved beyond a reasonable doubt each element of the offense, including the mens rea element of willfully or maliciously causing injury or torture or use of unreasonable force upon a child under the age of 18; and Instruction No. 17 which provided that the defendant must be found not guilty unless the State produces evidence which convinces you beyond a reasonable doubt of each element of the crime. We find that the instructions given to the jury adequately informed them of the State's burden to prove that the death of Mark Gomez by Appellant was intentional.

In his fifth and sixth assignments of error, Appellant asserts the trial court erred in failing to give jury instructions on the lesser included offenses of second degree manslaughter, second degree murder and misdemeanor manslaughter. The second degree manslaughter and second degree murder instructions were requested at trial, to which the State responded with a general objection to the giving of any instructions on lesser offenses. The trial court rejected Appellant's requests and limited the jury instructions to first degree murder and excusable homicide.

The determination of which instructions shall be given to the jury is a matter within the discretion of the trial court. Absent an abuse of that discretion, this Court will not interfere with the trial court's judgment if the instructions as a whole, accurately state the applicable law. *Pham v. State*, 752 P.2d 830, 832 (Okl.Cr.1988); *Pollard v. State*, 528 P.2d 1121 (Okl.Cr.1974). Instructions on a lesser included offense, whether requested or not, should only be given where the evidence would support such a theory. *Rawlings v. State*, 740 P.2d 153, 160 (Okl.Cr. 1987); *Ross v. State*, 717 P.2d 117 (Okl.Cr. 1986). In the present case, evidence presented by the State showed that the decedent's death was the result of injuries intentionally inflicted by the Appellant in a premeditated design to effect death. Appellant's defense was that he was attempting to revive the unconscious decedent and accidentally caused injuries which resulted in his death. Under this record, an instruction was not warranted on 21 O.S.1981, § 701.8(1), second degree murder as the evidence failed to show that Appellant acted in an imminently dangerous manner towards the decedent, evincing a depraved mind and without any premeditated design to effect death. *See Palmer v. State*, 788 P.2d 404, 408 (Okl.Cr. 1990).

Likewise, the evidence did not support an instruction under 21 O.S.1981, § 716, second degree manslaughter. To warrant such an instruction evidence must be presented at trial showing the defendant's culpable negligence. In *Freeman v. State*, 681 P.2d 84, 86 (Okl.Cr.1984), we stated that to determine whether the acts of the defendant were merely negligent or whether they rose to the level of culpable or criminal negligence the appropriate inquiry is "do the acts charged show a degree of carelessness

---

1. The requested instruction provided:
It is the burden of the State to prove beyond a reasonable doubt that the death is not excusa-ble homicide. If you find that the state has failed to sustain that burden, then the defendant must be found not guilty. (O.R. 294).

amounting to a culpable disregard of the rights and safety of others". In the present case the Appellant's own admissions, that he acted for the safety of the decedent in attempting to revive him, do not support this instruction. Further, evidence introduced by the State showing that the injuries suffered by the decedent were not the result of a fall or bump on the head occurring through Appellant's careless conduct, but were intentionally inflicted prohibits the giving of an instruction on second degree manslaughter. *See Williams v. State,* 12 Okl.Cr. 39, 151 P. 900 (1915).

▮ To support an instruction on misdemeanor-manslaughter under 21 O.S.1981, § 711(1), the evidence must show that the homicide was perpetrated without a design to effect death and by one engaged in the commission of a misdemeanor. Giving this instruction or either of the requested instructions on second degree murder and second degree manslaughter would have been inconsistent with the Appellant's defense of accident. While Appellant is entitled to an instruction on his theory of defense, he is not entitled to instructions on every possible theory of defense. *See Kinsey v. State,* 798 P.2d 630, 633 (Okl.Cr.1990). A review of the evidence in the present case shows that either Appellant had the premeditated design to cause the decedent's death or that he did not intend to harm the infant, but caused his death accidentally. Under this evidence the trial court did not abuse its discretion in rejecting Appellant's proposed instructions and properly limited the instructions to first degree child abuse murder and excusable homicide. Accordingly, these assignments of error are denied.

▮ In his seventh assignment of error, Appellant contends that he was denied a fair trial through prosecutorial misconduct and "extensive reliance on a combination of prejudicial expert, photographic and other crimes evidence". Initially, Appellant directs our attention to the testimony of Dr. Newland, a physician who assisted in the emergency room attempts to revive the decedent. Dr. Newland testified that based upon the information he received from third parties and his observations of the injuries on the decedent's body, he concluded that the injuries were caused by "non-accidental trauma". Appellant argues that as Newland was not an eyewitness to the sustaining of the injuries, received only a brief history of the decedent and never spoke to Appellant, his testimony was merely a personal opinion, improperly presented to the jury as that of an expert.

We find no error in the admission of Dr. Newland's testimony as that of an expert witness. Due to his education and experience, as set forth in the record, he was qualified to give an expert opinion as to the cause of the injuries. While he testified that he did not remember the exact people who gave him the background information on the decedent, Dr. Newland stated that his conclusions were based upon his clinical observations of the severity of the injuries, plus any available history of the victim. This testimony was properly admitted under 12 O.S.1981, § 2702. *See Roubideaux v. State,* 707 P.2d 35, 39 (Okl.Cr.1985). Further, the very testimony to which Appellant now complains was the result of the re-cross-examination of the doctor by defense counsel. It is well established that a party may not complain of error which he himself invited. *Staggs v. State,* 719 P.2d 1297, 1299 (Okl.Cr.1986); *Maynard v. State,* 625 P.2d 111, 113 (Okl.Cr.1981).

▮ Appellant also objects to the testimony of Dr. Balding of the Medical Examiners Office that he was familiar with a particular study of head injuries of children and that he agreed with its conclusion that in severe head injury cases wherein the death of the child resulted, "I don't remember, maybe ninety five percent I think was one figure, that uh, this represented some form of child abuse." Appellant asserts that this "statistical probability testimony was an unmistakable expert opinion of Appellant's guilt, stating a 95% probability that Mark was fatally injured in the course of child abuse." We disagree with this conclusion and find that the testimony was an opinion on the cause of the decedent's injuries, not on Appellant's guilt. No undue emphasis was placed on the statistical figures and the witness was thoroughly cross-examined by Appellant. Further, this Court has approved of testimony regarding professional studies of which an

expert is aware. *White v. State*, 752 P.2d 814, 818 (Okl.Cr.1988). *See also* 12 O.S.1981, § 2703.

▆ Additionally, Appellant objects to the testimony of Dr. Stuemky, that based upon his review of the autopsy report, the decedent's medical records, the photographs of the decedent, conversations with the Medical Examiner and other information made available to him, he determined the decedent's injuries could not have occurred as the Appellant described. Appellant claims the testimony was prejudicial due to the "absolutism" with which Dr. Stuemky testified to Appellant's guilt, despite having no medical involvement in the case and viewing only photographs of the decedent's body; and because of the "impressive litany of organizations" to which the witness belonged.

We have reviewed Dr. Steumky's testimony and find it was properly admitted at trial and not unduly prejudicial to Appellant. The record shows that there was no attempt by Appellant to stipulate to the doctor's qualifications as an expert witness nor any objection to the testimony. These qualifications, combined with his experience, show that Dr. Steumky was qualified to give an expert opinion as to the cause of the decedent's injuries. The jury was well aware that Dr. Steumky was not present at the hospital with the decedent and that he had never personally viewed the body. Contrary to Appellant's assertion, none of the testimony of the three doctors improperly invaded the province of the jury as did the expert witness testimony in *McCarty v. State*, 765 P.2d 1215 (Okl.Cr. 1988). The instructions show that the jury was fully informed as to the use and weight of expert opinion testimony. We find no error in the admission of the testimony of the three doctors.

Photographs of the decedent's injuries and the scene wherein those injuries were inflicted are challenged next, with Appellant asserting that they were inflammatory, cumulative and irrelevant. Detective Combs identified twelve (12) photos he took of Appellant's home and of the decedent in the emergency room and stated that they had been made into slides. He was then asked to match each slide with its corresponding photo as the slide was shown on a screen. Only the photos were then admitted into evidence, over Appellant's objections. We find no error in the admission of the photographs.

▆ Photographs are admissible if their content is relevant and unless their probative value is substantially outweighed by their prejudicial effect. *Smith v. State*, 737 P.2d 1206, 1210 (Okl.Cr.1987), *cert denied*, 484 U.S. 959, 108 S.Ct. 358, 98 L.Ed.2d 383 (1988); 12 O.S.1981, § 2403. The fact that the pictures are gruesome does not of itself cause the photographs to be inadmissible. The probative value of photographs of murder victims can be manifested numerous ways, including showing the nature, extent, and location of wounds, depicting the crime scene, and corroborating the medical examiner's testimony. *Moore v. State*, 736 P.2d 161, 164 (Okl.Cr.1987), *cert. denied*, 484 U.S. 873, 108 S.Ct. 212, 98 L.Ed.2d 163 (1987); *Thompson v. State*, 724 P.2d 780, 782 (Okl. Cr.1986); *Robison v. State*, 677 P.2d 1080, 1087 (Okl.Cr.1984). Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or needless presentation of cumulative evidence. See 12 O.S.1981, § 2403.

▆ The photographs in the instant case illustrate the decedent's wounds and were relevant in showing the location and seriousness of the injuries. As the photos corroborate the medical examiner's testimony, we find their probative value outweighs any prejudicial effect or gruesome nature. The photos of the interior of the house were relevant in depicting the crime scene which the jury had heard described only through testimony. Further, we find no error in the procedure utilized in this case to present these images to the jury. Instead of having the witness identify the images depicted in the 5 × 7 photos and then passing the photos to the jury, the State had the witness identify the images as reflected in the slides, which corresponded to the photos. The entire jury was thus able to view the picture at the time the witness identified it. As only one set of pictures, the photographs, was admitted into evidence, we do not find the procedure utilized here to have created unnecessary repe-

tition of the images. Any repetition in the twelve photos was not so prejudicial as to have inflamed the jury and denied Appellant a fair trial. *See Barr v. State,* 763 P.2d 1184, 1187 (Okl.Cr.1988); *President v. State,* 602 P.2d 222, 226 (Okl.Cr.1979).

■ Appellant further asserts that he was denied a fair trial by the improper admission of evidence of other crimes. Michelle McElmurry, the decedent's mother, and two other witnesses testified to specific bad acts and instances of abuse committed by the Appellant upon the decedent. This testimony, in part that Appellant placed the decedent in a kitchen drawer and then closed the drawer, that Appellant would neither let the crying decedent go to his mother nor sleep or play with toys, and that Appellant once attempted to fold the decedent up in a couch, was properly admitted as relevant to show Appellant's attitude and feeling of malice toward the decedent. *Villanueva v. State,* 695 P.2d 858, 860 (Okl.Cr.1985). Although this testimony, which established the necessary requirements for child abuse, may have consisted of evidence of other crimes, it was properly admissible at trial. *See Wadley v. State,* 553 P.2d 520, 523 (Okl.Cr.1976).

Further, this testimony was properly admitted to show Appellant's intent to injure the decedent and to refute his claim of accident. Both situations are well-recognized exceptions to the prohibition against admission of evidence of other crimes. *See Burks v. State,* 594 P.2d 771, 772 (Okl.Cr.1979), *overruled in part on other grounds,* 772 P.2d 922 (Okl.Cr.1989).

■ Appellant argues that during closing argument, "the State had a field day with the other crimes/bad acts evidence and repeatedly told the jury to find Appellant guilty on the basis of that evidence." As Appellant failed to raise contemporaneous objections to any of the remarks now complained of, we have reviewed only for fundamental error. *Thomason v. State,* 763 P.2d 1182 (Okl.Cr. 1988); *Smith v. State,* 737 P.2d 1206 (Okl.Cr. 1987), *cert. denied* 108 U.S. 358, 108 S.Ct. 358, 98 L.Ed.2d 383 (1987). While we find that some of the comments certainly tested the bounds of proper argument, we cannot say they were determinative in any way of

Appellant's guilt. *Dunagan v. State,* 734 P.2d 291 (Okl.Cr.1987). Accordingly, this assignment of error is denied.

### SENTENCING STAGE ISSUES

■ During the second stage of trial, the State sought to prove two (2) aggravating circumstances; 1) that the murder was especially, heinous, atrocious or cruel; and 2) the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. In his eighth assignment of error Appellant argues that the State proved these aggravators with testimony from witnesses for whom no notice had been provided. Title 21 O.S.1981, § 701.10, provides that "only such evidence in aggravation as the State has made known to the defendant prior to his trial shall be admissible". We have previously stated that this section "contemplates that a defendant in a capital murder case be provided with a summary of the evidence intended to support the alleged aggravating circumstances, and a list of the witnesses the State might call". *Green v. State,* 713 P.2d 1032, 1038 (Okl.Cr.1985).

In the present case, the State filed a "More Definite and Certain Statement Regarding Bill of Particulars" setting forth in detail the evidence that would be presented in the second stage and which aggravating circumstance each piece of evidence was to prove. The notice did not include a list of witnesses nor did it specify the witness that would testify to particular bad acts. However, the State did provide a list of witnesses to the defense, updating it six (6) times prior to trial. After raising one objection early on in the case, no further objections were entered by Appellant to the succeeding three (3) updates of the witness list. By the time of trial the defense had been informed of all evidence to be offered in support of the aggravators and given a complete list of witnesses. Appellant's argument on this point is one of form over substance. We find the form and procedure utilized in this case adequately fulfilled the notice requirements of 21 O.S. 1981, § 701.10, and was sufficient to allow Appellant time to prepare and present a defense or explanation for the alleged crimi-

nal misconduct. *See Wilson v. State,* 756 P.2d 1240, 1245–46 (Okl.Cr.1988). Accordingly, this assignment of error is denied.

■ Appellant next challenges the jury instructions given in the second stage. In his ninth assignment of error, he contends that the sentencing instructions failed to set forth the proper burden of proof as they did not inform the jury that the State had the burden of proving beyond a reasonable doubt that the aggravating circumstances must outweigh the mitigating evidence. This argument was rejected in *Johnson v. State,* 731 P.2d 993, 1005 (Okl.Cr.1987), *cert. denied* 484 U.S. 878, 108 S.Ct. 35, 98 L.Ed.2d 167 (1987), wherein we stated that the "burden of proof" analysis is not strictly applicable to the weighing process of the sentencing stage. We stated further:

> It is well settled, . . . that our constitution protects an accused against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' (citations omitted) Our statute follows this proscription and provides that the State must prove beyond a reasonable doubt the existence of at least one of the enumerated aggravating circumstances. However, the determination of the weight to be accorded the aggravating and mitigating circumstances is not a "fact" which must be proved beyond a reasonable doubt, but is a balancing process. *Id.*

Reviewing the instructions given in the present case as a whole, they stated the applicable law and provided the defendant with the presumption of innocence during the second stage of trial. The instructions allowed a finding that the death sentence was appropriate only where the aggravating circumstances were proven beyond a reasonable doubt. No lesser standard of proof was provided.

■ Appellant further asserts that an "anti-sympathy" instruction given during the first stage of trial and referred to during the second stage of trial improperly limited the jury's consideration of mitigating evidence and any emotional response to it. This argument was rejected in *Fox v. State,* 779 P.2d 562, 574–5 (Okl.Cr.1989). We are not now persuaded to deter from that position. *See also Smith v. State,* 819 P.2d 270, 279 (Okl. Cr.1991); *Moore v. State,* 788 P.2d 387, 401 (Okl.Cr.1990).

■ Appellant also argues that Instruction No. 9[2] authorized imposition of the death penalty although mitigation may have outweighed aggravation. This argument was rejected by this Court in *Johnson v. State,* 731 P.2d at 1003, wherein we stated:

> The idea that the jury may decline to impose the death penalty even if aggravating circumstances are not outweighed by mitigating circumstances is subsumed within an instruction that if the jury finds one or more aggravating circumstances they may consider imposing the death penalty, i.e. that they could, but did not have to, impose the death penalty. (emphasis in original)

Similarly, Instruction No. 9 in the present case did not direct the jury that it must assess death if aggravating circumstances were not outweighed by mitigating evidence, but rather gave it the option of imposing the death penalty if the aggravators outweighed the mitigating evidence.

■ Further, Appellant contends the trial court erred in rejecting his instruction requiring the jury to articulate the method by which it weighed the aggravating against the mitigating. He argues that requiring the jury to reduce to writing the aggravating circumstances found, but not the mitigating, prevents meaningful appellate review. Even though Oklahoma is a reweighing state, the jury is not statutorily required to memorialize in writing the mitigating circumstances found. 21 O.S.1981, § 701.11. That this function is not required of the jury does not prevent effective appellate review. Under 21 O.S.1981, § 701.13, this Court has the re-

2.  Instruction No. 9 read as follows:
    If you unanimously find that one or more of the aggravating circumstances exists beyond a reasonable doubt, unless you also unanimously find that any such aggravating circumstance or circumstances outweigh the finding of one or more mitigating circumstances, the death penalty shall not be imposed. (O.R. 338)

sponsibility to review the entire record to determine whether the death penalty was imposed under the influence of passion, prejudice, or any other arbitrary factor.

■ Instructions No. 7 and 8[3] have drawn the next objections from Appellant. He objects to the use of the term "may" in Instruction No. 7. We disagree with Appellant's interpretation of the instruction and find that substituting "may" with "must" would not be a correct statement of the law. Such an alteration of the instruction would essentially take from the jury their duty to make an individualized determination of the appropriate punishment.

■ Appellant further argues "[I]nstruction No. 8 reinforced Instruction No. 7's unconstitutional invitation to disregard mitigation." Instruction No. 8 listed three (3) specific mitigating factors for the jury's consideration. Contrary to Appellant's argument, the instructions in the present case did not direct the jury to disregard any mitigating evidence, but rather provided the fullest possible latitude for the consideration of any evidence in mitigation. The jury was not prohibited in any way from considering any and all relevant mitigating evidence. *See Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). See also *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988).

■ Finally, Appellant lodges an objection for the first time to Instruction No. 11, claiming it "completely precluded the jury from considering any mitigating evidence in the first stage" ... He specifically objects to the following language:

> In arriving at your determination as to what sentence is appropriate under the law, you are authorized to consider only the evidence received in open court pre-

sented by the state and the defendant during the sentencing phase of this proceeding. (O.R. 340).

In light of the State's specific incorporation of all first stage evidence into the second stage of trial, we find that Appellant's argument must fail. Considering all of the instructions given during the second stage of trial, we do not find that a reasonable likelihood exists that the jury would apply Instruction No. 11 in such a way as to prevent the consideration of any mitigating evidence. *See Boyde v. California*, 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). Accordingly, we find the jury was adequately instructed as to the applicable law during the second stage of trial.

Appellant further argues that during the second stage closing argument, the prosecution repeatedly told the jury to disregard mitigating evidence and pleas made on behalf of Appellant's life. Reviewing the closing argument for fundamental error only as no contemporaneous objections were made the comments now complained of, we disagree with Appellant's characterization of the comments and find they were well within the bounds of proper closing argument. *Carol v. State*, 756 P.2d 614, 617 (Okl.Cr.1988).

In his tenth assignment of error, Appellant alleges that the aggravating circumstance of "especially heinous, atrocious or cruel" is being applied unconstitutionally and that it is not supported by the evidence. The jury instruction given in the present case, both paragraphs of Oklahoma Uniform Jury Instructions—Criminal No. 436, embodies the limitations which the sentencer must consider in the application and finding of this particular aggravating circumstance. *Stouffer v. State*, 742 P.2d 562, 563 (Okl.Cr.1987) (Opinion on Rehearing), *cert denied*, 484 U.S. 1036,

---

3. Instruction No. 7 reads as follows:
   Mitigating circumstances are those which, in fairness and mercy, may be considered as extenuation or reducing the degree of moral culpability or blame. The determination of what are mitigating circumstances is for you, as jurors to resolve under the facts and circumstances of this case. (O.R. 337).
   Instruction No. 8 provided:
   Evidence has been offered as to the following mitigating circumstances:

(1) The defendant has no significant history of prior violent criminal activity;
(2) The defendant's youthful age;
(3) The defendant would not be a threat to society if he should in the future be released from the penitentiary.
Whether these circumstances existed, and whether these circumstances are mitigating, must be decided by you. (O.R. 338).

108 S.Ct. 763, 98 L.Ed.2d 779 (1988). We have reexamined these principles on several occasions and have since consistently applied the narrow construction discussed above. *See Romano v. State*, 847 P.2d 368, 386 (Okl. Cr.1993). Accordingly, we find that this particular aggravating circumstance was applied in a constitutional manner in the present case.

The evidence supporting a finding that the murder was especially heinous, atrocious or cruel requires proof that the death was preceded by torture or serious physical abuse. *Stouffer v. State*, 742 P.2d at 563. *See also Fox v. State*, 779 P.2d 562, 576 (Okl.Cr.1989); *Fowler v. State*, 779 P.2d 580, 588 (Okl.Cr.1989); *Foster v. State*, 779 P.2d 591 (Okl.Cr.1989); *Rojem v. State*, 753 P.2d at 369. After making such a determination, we may not only consider the actual physical suffering of the victim, but the attitude of the killer and the pitiless nature of the crime. *Thomas v. State*, 811 P.2d 1337, 1349 (Okl.Cr. 1991); *Nuckols v. State*, 805 P.2d 672, 675 (Okl.Cr.1991) (opinion on post-conviction).

While the State did not specifically introduce any evidence as to this aggravating circumstance during the second stage of trial, all of the evidence of the decedent's injuries introduced during the first stage of trial was incorporated into the second stage. This evidence included expert testimony that the decedent received multiple injuries immediately prior to the time of death. These included burns to the cheek, ear, and upper thighs; lacerations on his arms; bruises on his back; head injuries, including a subdural hemorrhage which resulted in swelling of the brain, and a complete transection of his liver. The evidence showed that these injuries could not have occurred by accident, but were intentionally inflicted. Both the severance of the liver and the swelling of the brain were the result of blunt force blows. The experts testified that such a blow to the liver would have caused an immediate loss of consciousness and that the blow to the head could also have resulted in loss of consciousness or merely disorientation, but they could not identify the sequence in which the injuries were inflicted upon the decedent. However, it is clear that numerous severe injuries were inflicted upon the decedent prior to this death and that the decedent suffered pain before his death. *See Rojem v. State*, 753 P.2d at 369.

Further evidence supporting this aggravator is found in testimony from witnesses to the treatment suffered by the decedent at the hands of the Appellant. In addition to testimony that Appellant tried to fold the decedent up in a hide-a-bed couch; that he put him in a kitchen drawer and closed the drawer; and that he taunted the 13 month old decedent by not letting him go to his mother, go to sleep or play with his toys, evidence also showed that the decedent was afraid of the Appellant and would cry and refuse to leave with him; that Appellant had said that he hated the decedent because he was not his child; that Appellant had slapped the decedent and thrown him on the floor; that on one occasion Appellant wrapped duct tape around the decedent's shoulders, threw him in a bathtub of cold water then hung him up by his heels; and on another occasion that Appellant wrapped his belt around the decedent and squeezed him.

While the Appellant was a part of the decedent's short life for only one month, it was a time of terror, torture and abuse for the young decedent. Surely no clearer picture of the cruel and pitiless nature of this crime could be presented than that of the repeated, deadly abuse of the decedent by the Appellant. Accordingly, we find the aggravator of "especially heinous, atrocious or cruel" supported by sufficient evidence.

In his eleventh assignment of error, Appellant contends that the evidence was insufficient to support the aggravating circumstance of "continuing threat". In evaluating whether there is a probability that the defendant will commit acts of violence which will constitute a continuing threat to society, we have held that the murder for which the defendant was convicted can be considered as supporting evidence. *Fox*, 779 P.2d at 577; *Fowler*, 779 P.2d at 589; *Liles v. State*, 702 P.2d 1025, 1031 (Okl.Cr.1985); *Robison v. State*, 677 P.2d 1080, 1088 (Okl.Cr.1984), *cert denied*, 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984); *Stafford v. State*, 665

P.2d 1205, 1217 (Okl.Cr.1983), *vacated,* 467 U.S. 1212, 104 S.Ct. 2651, 81 L.Ed.2d 359 (1984), *affirmed on remand,* 700 P.2d 223 (Okl.Cr.1985) *cert denied,* 474 U.S. 865, 106 S.Ct. 188, 88 L.Ed.2d 157 (1985). These cases addressed the characteristic of callousness as reflected by the defendant's actions. This aggravating circumstance may also be proved by evidence of unadjudicated criminal acts. *Johnson v. State,* 731 P.2d 993 (Okl.Cr. 1987).

◼ During the second stage of trial the State introduced letters Appellant had written from jail threatening Michelle McElmurry; the District Attorney; Juan Gomez, the decedent's father; and Richard Taylor, McElmurry's then roommate, with physical harm and even death. Evidence was also introduced of Appellant's possession of a sawed-off shotgun and two machetes. This evidence of Appellant's violent nature, together with the callous nature in which Appellant killed Mark Gomez, support the jury's finding of the continuing threat aggravating circumstance.

◼ In his final assignment of error, Appellant contends that the aggravating circumstance of "continuing threat" is being applied unconstitutionally. He argues that the circumstance is not properly defined and refers to it as the "standardless catch-all aggravating circumstance." Initially, we must note that Appellant failed to request any additional definitional language be given to the jury. Having failed to properly preserve this error for appellate review, we will review for fundamental error only. *Liles v. State,* 702 P.2d 1025, 1031 (Okl.Cr.1985), *cert. denied* 476 U.S. 1164, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986).

We have previously upheld this aggravating circumstance finding it specific, not vague, and readily understandable. *Stiles v. State,* 829 P.2d 984, 996 (Okl.Cr.1992); *Workman v. State,* 824 P.2d 378, 383 (Okl.Cr. 1991); *Munson v. State,* 758 P.2d 324 (Okl. Cr.1988) *cert. denied* 488 U.S. 1019, 109 S.Ct. 820, 102 L.Ed.2d 809 (1989); *Liles,* 702 P.2d at 1031. We are not now persuaded to alter that position. Accordingly, this assignment of error is denied.

## V. MANDATORY SENTENCE REVIEW

Pursuant to 21 O.S.Supp.1987, § 701.13(C), we must determine (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor, and (2) whether the evidence supports the jury's finding of an aggravating circumstance as enumerated in 21 O.S.1981, § 701.-12. The jury found the existence of two (2) aggravating circumstances: 1) that the murder was especially, heinous, atrocious or cruel; and 2) the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. We find that each aggravating circumstance was supported by sufficient evidence. 21 O.S.1981, § 701.12(4) and (7). Upon careful consideration of the evidence supporting these aggravating circumstances, and the evidence presented in mitigation, including but not limited to Appellant's youth, the absence of any significant history of prior violent criminal activity, that Appellant would not be a threat to society if he should in the future be released from the penitentiary, and testimony of character traits of truth and veracity and that of a law abiding citizen, we find the sentence of death factually substantiated and appropriate. Having reviewed the record, we cannot say the jury was influenced by passion, prejudice, or any other arbitrary factor contrary to 21 O.S.Supp.1987, § 701.13(C), in finding that the aggravating circumstances outweighed the mitigating evidence. Accordingly, finding no error warranting reversal or modification, the judgment and sentence for First Degree Murder is **AFFIRMED.**

JOHNSON, V.P.J., and CHAPEL, J., concur.

LANE, J., dissents.

LANE, Judge, dissenting.

I dissent to the opinion of the majority on the issue of the trial court's refusal to give OUJI–CR–727 as a requested instruction. I believe that any time there is sufficient evidence to cause the trial judge to give instructions on an affirmative defense an instruction must be given properly setting out the bur-

den of proof. See, i.e., *Bechtel v. State*, 840 P.2d 1 (Okl.Cr.1992) (instruction necessary for defense of self defense) and *Lee v. State*, 655 P.2d 1046 (Okl.Cr.1982) (instruction necessary for defense of entrapment). Here, the appellant raised the defense of excusable homicide by reason of accident. The trial court instructed on this defense and gave all of the uniform instructions but number 727, the instruction which sets out the burden of proof.